## B. J. MEEK, Appellant, v. JOHN, B. HURST.

### Division One, November 27, 1909.

1. **REFORMATION OF CONTRACT: Mistake: Sufficient Pleading.** It is the general doctrine of equity that a mistake common to both parties to a contract is an indispensable element to the reformation of a contract. Therefore, absent any express averment of surprise, misrepresentation or other form of fraud, or that the mistake in the description of the land embraced in the contract of sale was a mistake of fact mutual to both parties, or an averment from which mutuality could be fairly inferred, a bill to reform the description does not state a cause of action in equity for the reformation of the contract on the ground of mistake in the description.

2. ——: ——: ——: **Specific Performance.** By the same suit in equity a contract may be reformed and also specifically enforced, and the reformation may be disallowed, and that part of the contract susceptible of specific performance be specifically enforced.

3. **SPECIFIC PERFORMANCE: Demurrer: Things Admitted Thereby.** All allegations (not absurd or impossible) of substantive fact well pleaded, are taken as true upon demurrer filed. But allegations announcing mere conclusions of law are not admitted, nor are the pleader's construction and interpretation of a written instrument, made the basis of his cause of action and set forth in the bill, taken as true, but it is for the court to construe it,

4. ——: ——: **Agent's Right to Buy.** Defendant's written contract authorizing plaintiff to sell certain land for him cannot be held to be a contract giving plaintiff an option to buy. It creates the relation of principal and agent, and the agent authorized to sell cannot in his principal's name enter into a

contract ,with himself to buy. To permit that would be to destroy the agent's duty to be faithful to his principal, to keep him informed and look out for his interests.

Appeal from Livingston Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*Davis & Son* and *P. D. Kitt* for appellant.

(1) When a description of the land in a contract for the conveyance of real estate is by mistake indefinite and uncertain, the contract may, in the same suit, be reformed and then specifically enforced as reformed. Hook v. Craighead, 32 Mo. 405; Waterman v. Dalton, 3 Wis. 273; Pomeroy on Spec. Per. (2 Ed.), sec. 262; Glos v. Wilson, 198 Ill. 44; 20 Ency. Pl. and Pr., 396; Story's Eq. Jur., chap. 5; 20 Am. and Eng. Ency. Law (2 Ed.), 825. The Statute of Frauds does not interfere with the power of courts of equity to reform contracts when the parties intended to comply with the statute but failed through mistake. Conway v. Gore, 24 Kan. 389; 18 Ency. Pl. and Pr., 773. The power of a court of equity to reform instruments which come within the provisions of the statute has long been recognized by this court and is too well settled to be now overturned. Leitensdorfer v. Delphy, 15 Mo. 167; Hutsell v. Crewse, 138 Mo. 1; Hook v. Brown, 195 Mo. 313; Fanning v. Doan, 139 Mo. 410; Mississippi Valley Ir. Co. v. McDonald, 146 Mo. 479; Franklin v. Cunningham, 187 Mo. 195; Sicher v. Rambousek, 193 Mo. 129; Crawley v. Crafton, 193 Mo. 431; Owens v. Railroad, 110 Mo. App. 327. (2) The references in the receipt to the contract which had been executed on April 25, 1905, are sufficient to require the price, the terms and the description of the property contained in the original contract to be read into the receipt as

though they were a part thereof. The separate writings will be read together. Wiley v. Roberts, 27 Mo. 388; Briggs v. Muncheon, 56 Mo. 467; Donovan v. Brewing Co., 92 Mo. App. 341; Peycke v. Ahrens, 98 Mo. App. 456; Thayer v. Lun, 22 Ohio St. 62; Boeckeler v. McGowan, 12 Mo. App. 507; 20 Cyc., p. 263, par. 2; Heickman v. Walfstein, 12 Mo. App. 560.

*Lewis A. Chapman* for respondent.

(1) The petition fails to state facts sufficient to constitute a cause of action at law or in equity. The petition is based upon the alleged writings, dated April 25, 1905, and May 9, 1905. It is claimed that these constituted a contract. These writings are set out in the petition as the basis of the suit. There is no claim that there was any part performance such as would take a verbal agreement out of the Statute of Frauds. It is not claimed that there was any verbal agreement. It is alleged that the contract was an option contract until the receipt was signed by respondent, dated May 9, 1905. The whole claim of the appellant as the foundation must be deduced from the said alleged agreements. The first one is called an option contract. It is signed alone by the respondent. If the said contract was ever intended for an option contract the writer of it was very unfortunate in the language he used when he wrote it out. This was no option contract. "An option for the sale of land, supported by a valuable consideration is not a sale of real estate, nor an agreement to sell, but is an executed contract, giving the exclusive privilege of purchasing within the time limited, and which cannot be withdrawn within the stipulated time, and on acceptance becomes an executory contract which may be specifically enforced." Pollock v. Brookover, 53 S. E. 795. An option is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed

price within a certain time.  Ide v. Leiser, 10 Mont. 5.
(2)  The contract dated April 25, 1905, was complete
in itself.  If the English language means anything it
was simply and purely a contract of agency.  It pur-
ports to be signed by the respondent and gave to the
appellant authority to sell the land as agent for the
respondent, and set forth the terms upon which he
was authorized to sell.  The appellant was authorized
to make contract in the name of the respondent.  He
was to sell for cash, to be paid $500 to bind the bargain
and the balance March 1, 1906, when the deed was to
be executed and possession given.  The appellant
could execute contract in respondent's name and re-
ceive the $500.  When the appellant turned over $500
to respondent as alleged and as appears by the receipt
he did nothing more than he had a right to do under
the terms of his agency and respondent's receipt is not
any evidence of a sale, when read in connection with
his contract of agency.  The money was receipted for
as having been received by the appellant on a sale
he had made to some one under the terms of his con-
tract of agency.  The receipt refers to the agency con-
tract and the amount paid is the very amount that was
to be paid down to bind a bargain.  Johnson v. Mc-
Gruder, 15 Mo. 369; Mann's Executors v. Robinson, 42
Am. Rep. 773.  (3)  An agent authorized to sell can-
not without the consent of his principal become the
purchaser. He cannot sell to himself.  "The only safe
rule in such cases, is to treat the contract as void,
without reference to the question of fraud in fact,
unless affirmed by the other party.  This rule ap-
pears so manifestly in accordance with sound public
policy as to require no authority for its support."
Mechem on Agency, secs. 461, 462; Grumley v. Webb,
44 Mo. 444; People v. Township Board of Overyssel,
11 Mich. 222; Clute v. Barron, 2 Mich. 192; Dwight
v. Blackmar, 2 Mich. 330; Moore v. Mandlebaum, 8
Mich. 443; Merryman v. David, 31 Ill. 404; Catton v.

Holliday, 59 Ill. 176. (4) If the contract of agency could be construed to be an option contract, which it could not be, there would have to be an acceptance by the appellant. There is no acceptance. There was no contract binding both parties. There is simply a receipt for so much money and a reference to the agency contract; there was no promise to perform on the part of the appellant, no binding obligation was on the appellant. Levin v. Dietz, 194 N. Y. 376; 20 L. R. A. [N. S.] 251.

LAMM, P. J.—Plaintiff claims to have purchased defendant's land in Livingston county by written contract; and sues for reformation and specific performance.

Cast *nisi* on a general demurrer to his first amended bill, he refused to plead over, suffered judgment and appealed.

The reformation sought relates to the contract description of the real estate, which is: "S. W. ¼, Sec. 14, and 6½ acres out of S. E. ¼, Sec. 14. All in Twp. 59, R. 24, containing in all 165½ acres." Referring to the "6½ acres," plaintiff's bill charges said contract description is not the true one but related to an agreement to sell two small parcels of land, *viz.*, an acre off the south end of the southwest quarter of northeast of section 14, and 4½ acres, more or less, described by given metes and bounds, in the southeast quarter of said section. In that regard the bill charges "that by a mistake of the scrivener in drawing said contract" the said two small parcels were described as "6½ acres out of the S. E. ¼, Sec. 14, instead of the true description" as set forth. It is not alleged in the bill that the scrivener in drafting the contract was the mutual agent of plaintiff and defendant; nor is it alleged that the mistake was a mutual mistake of the parties to the contract. It is charged that plaintiff is a real estate agent plying

his vocation at Chillicothe as a dealer in buying and selling land. The record shows the contract was partly in print and partly in writing. Presumably it is a blank form used by plaintiff in his business. While not material to any question to be determined, it is fair to presume, from the usual course of business, that the "scrivener" was the plaintiff himself who filled out his own blank.

Referring to the phase of the bill anent specific performance, it will not be necessary to set forth the entire bill. In brief, it alleges the contract consisted of two parts, both in writing, bearing different dates, but relating to each other and both pleaded *in haec verba*—the first part reading:

"AUTHORITY TO SELL.

"No. ........

"I, John B. Hurst, of Chula, P. O., Livingston county, State of Missouri, hereby authorize B. J. Meek, of Chillicothe, Mo., to sell the following described real estate, situate in the County of Livingston, State of Mo., to-wit:

"S. W. ¼, Sec. 14, and 6½ acres out of S. E. ¼, Sec. 14. All in Twp. 59, R. 24, containing in all 165½ acres, and to make contract therefor in my name, subject to the condition hereinafter named. I agree to accept in full payment of said farm the sum of $3900.00 net to me, & cure title. In payment of the above-mentioned sum net to me, I agree to accept $.... All (or not less than $...... All) cash. I would want $500.00 to bind sale, balance March 1, 1906. I agree to give possession of said premises Mar. 1-1906.

"I agree in case of sale to give purchaser a general warranty deed to the above described premises, and to furnish him a complete abstract, which shall show a fee simple title in me.

"This authority is irrevocable for a period of 30 days from its date, after which it can be terminated

by giving notice in writing of the intention to with-draw.

"Witness my hand at Wagon Road date April 25, 1905.                                        "J. B. HURST,
                                                             "Owner."


The second part reads:


                                   "May 9, 1905.
"Received of B. J. Meek $500.00, in part payment of my land situated in Livingston county, Missouri, consisting of 165½ acres, in compliance with contract entered into by me on the 25th day of April, 1905.
                                        "J. B. HURST."


For convenience, that part of the contract headed, "Authority to Sell," of date April 25, 1905, will be called "A;" and the receipt of date May 9, 1905, "B."

The bill is not drawn on the theory there was an oral contract between plaintiff and defendant relating to the purchase of real estate, followed by such possession in (or performance by) the vendee, or payment in whole or in part, or valuable improvements made, as would operate to take the case out of the Statute of Frauds and Perjuries. Nor is it drawn on the theory that the written contracts were modified by an after oral agreement accompanied by such possession and performance, etc., as would take the case out of the Statute of Frauds and Perjuries. *Contra,* the bill is drawn on the theory that the whole contract was in writing and consisted of A and B. The pleader's construction of the written contract is set forth in the bill to be that plaintiff had an option to buy the land for a period of thirty days from April 25, 1905, and that defendant desired "to sell the land to plaintiff or to place the same in his hands for sale" and to that end executed A; that on May 9, 1905, it

was agreed that plaintiff should buy and to that end defendant executed B; that plaintiff thereby made his choice under A to buy in his own proper person. The pleader next assumed that his pleaded construction of A and B was correct and, on that assumption, charges in his bill that defendant under the terms of A and B was bound to make him a good and sufficient warranty deed on making full payment. He then avers a tender of the full contract price on March 1, 1906; also, that prior to that time, to-wit, four days after the receipt of the cash payment, defendant repudiated the contract, refused to make a deed and tendered back to him, plaintiff, the cash payment, whereupon plaintiff then and there tendered the balance of the purchase price and demanded a deed, which demand and tender defendant refused.

That we have put the right construction on plaintiff's bill is evidenced by the following excerpt from his counsel's brief, *viz.*:

"Defendant is the owner of the 165½ acres situate in section fourteen, township 59, range 24, in Livingston county, Missouri. On April 25, 1905, he entered into a contract with plaintiff for the sale of said land for the sum of $3900; $500 to be paid in cash and the remainder, $3400 to be paid on March 1, 1906, and on May 9, 1905, plaintiff, in compliance with the terms of said original contract, paid defendant the $500 which was to be paid in cash, and defendant executed his written receipt therefor, which receipt shows, in connection with said original contract, that defendant is the seller of said land; that plaintiff is the purchaser thereof, and that said $500 was paid on said land in compliance with said original contract, made April 25, 1905."

The foregoing is enough of the record to pass upon the demurrer.

I.   Absent any express averment of surprise, misrepresentation or other form of fraud, or that the mistake was a mistake of fact mutual to both parties to the contract or an averment from which mutuality could be fairly inferred, the bill did not state a cause of action in equity for the reformation of a contract on the ground of mistake; for it is the general doctrine of equity that a mistake common to both is an indispensable element to the reformation of a contract.   [1 Story Eq. Juris. (13 Ed), sec. 155; Castleman v. Castleman, 184 Mo. 432; Benn v. Pritchett, 163 Mo. 560; Williamson v. Brown, 195 Mo. 313.]

Mutuality might arise from the fact that the mistake was the mistake of a scrivener who acted as mutual agent of both parties in drafting the contract —but plaintiff's bill is dark on that score.

It may be conceded to appellant that by the same suit in equity a contract may be reformed and also specifically enforced, but reformation will not go and the bill will be bad in that regard unless elements necessary to the application of that equitable doctrine are pleaded as grounds for the relief.

II.   But the question of reformation is not decisive of the case; for we take it as accepted doctrine that a vendee (at his option) may have specific performance of that part of the contract susceptible of specific performance whenever a decree can go, which in the sound discretion of the chancellor, will do rounded equity between parties litigant.

Attending to the sufficiency of the bill in stating a cause of action for specific performance, we conclude the demurrer was well taken.   This, because:

(a)   For the purposes of a demurrer, all allegations (not absurd or impossible) of substantive fact well pleaded are taken as true.   But this doctrine goes hand in hand with another, *viz.*: that for the purposes of a demurrer these allegations of the bill announcing

mere conclusions of law are not admitted; and, akin to the last proposition, there is another, *viz.*: that the pleader's construction and interpretation of a written instrument lying at the root of his cause of action and set forth in the bill are not taken as true on demurrer. To the contrary, it is for the court, not the pleader, to put a construction upon an unambiguous and entire contract pleaded as the basis of recovery or relief, as here. We have so lately and fully ruled this question in Donovan v. Boeck, 217 Mo. l. c. 83 *et seq.* (q. v.), that further exposition is out of place. This is a typical case calling for the application of that doctrine.

(b) Applying it, we deem the interpretation put upon A by the pleader is a strained one; construed by its terms and plain intendment, it is bare of any element giving plaintiff an option to buy defendant's land. There is no word in it showing their minds met on that proposition. A is obviously a power of attorney, irrevocable for thirty days, authorizing plaintiff, as defendant's *agent,* to sell the land and to contract for such sale with a procured buyer in the name of defendant, binding defendant to accept a partial cash payment of $500 as earnest money, or all cash, furnish an abstract showing a fee simple title and make a general warranty deed on payment of the balance of the agreed net price by March 1, 1906. In other words, the confidential relation of principal and agent was created between plaintiff and defendant; and, since no man can contract with himself, that relation forbade the use of the authority to sell to consummate a purchase in his own person.

Unquestionably that fiduciary relation could be brought to an end and, in that event, Hurst and his sometime agent could deal in relation to the subject-matter at arm's length and make any new valid contract they saw fit to make, but there is no allegation of that sort in plaintiff's bill. It does not allege that

the relation of principal and agent, once existing, had come to an end; nor does it allege a new contract in that the agent made all disclosures to his principal by giving him the benefit of full information, and that the principal elected to deal with the agent as purchaser under a valid contract then entered into. To the contrary, this plaintiff alleges (and plants himself upon the proposition in his brief) that the instrument called A, in and of itself, gave him an option to purchase and that he acted on such option as of clear legal right. In that view of the case plaintiff's learned counsel must be held to contend, in effect, that if Mr. Meek, as agent of Hurst, had entered into a written contract with himself as the other contracting party, it would not have been contrary to good morals, but would have been in compliance with the terms of A— a position bad in morals and law and which learned counsel would concede to be bad when baldly stated as above.

We are of the opinion that under the allegations of this bill the payment and receipt evidenced by B were in pursuance of the authority given in A, which in turn implies and presupposes that plaintiff had sold to a third party and received $500 to bind the bargain.

The doctrine of the law that forbids an agent to buy from or sell to himself is not based on the idea that such deal in dirt is necessarily (to speak colloquially) a "dirty" deal—that is to say, resulted in an injury to or a fraud upon the principal. But, it is rather based on the idea of closing the door to the temptation to commit fraud. It tends to keep the agent's eye single and clear to the rights and welfare of his principal. To allow one acting in the fiduciary relation of agent to buy from or sell to himself is a solecism in the realm of law; for the moral stamina of the average man is inadequate to preserving a fine glow of fidelity to his trust and confidential relation in such transaction; and

Weigman v. Railroad.

the interdiction is enforced with a strong hand in courts of justice. [Montgomery v. Hundley, 205 Mo. l. c. 148 *et seq.*; Moore v. Mandlebaum, 8 Mich. 434; Grumley v. Webb, 44 Mo. 444; Evans v. Evans, 196 Mo. l. c. 23.]

Under A plaintiff had the right to collect the first cash payment, he having power to contract on condition that $500 be paid simultaneously to bind the bargain. Receipt B comports with that idea. It is impossible to read it as constituting a binding contract in and of itself between plaintiff and defendant enforceable in a court of equity. Accordingly, to entitle plaintiff to specific performance he must connect that receipt with the power of attorney A and make one contract of the two instruments. He undertook to do that, but to do so puts a construction upon that power of attorney its terms do not import.

The ruling below on the demurrer was well enough. The judgment is affirmed. My Brethren all concur in these views.