**MISSOURI HIGHWAY & TRANSPOR-
TATION COMMISSION,
Plaintiff-Appellant,**

v.

**Charles G. SAMPLE and Walter Crain,
Defendants-Respondents.**

**No. 49972.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 24, 1985.

Daniel P. Pritchard, Bruce A. Ring, Jefferson City, for appellant.

John T. Yarbrough, Stanley J. Gookdin, St. Louis, for respondent.

REINHARD, Presiding Judge.

This case comes to the writer on reassignment. The State Highway and Transportation Commission (Commission) appeals from a judgment entered in favor of defendant, Sample, in its suit to recover damages. We reverse and remand.

Plaintiff initially sued its former employee, Sample, and former appraiser, Crain, charging that Sample induced it to hire Crain, although both defendants knew he was not qualified. The petition further alleged that Crain secretly paid Sample a portion of his fees, thereby defrauding plaintiff. Plaintiff sought damages of $107,200, the amount of fees paid to Crain. Defendants denied most of the petition's allegations. Plaintiff subsequently dismissed its cause of action against Crain, who paid $3,500 in settlement of his case. Plaintiff and Sample then entered into a written stipulation of facts, which, with the attached exhibits, constitutes all the evidence in the cause.

The stipulation provides that from 1973–1978, while Sample was employed by the Commission as a district right-of-way agent, plaintiff entered into contracts with Crain to furnish appraisals setting forth the reasonable market value of various tracts of property. Plaintiff paid Crain a total of $107,200 for the appraisals, which were furnished between 1973 and 1978. The fees paid were typical of those paid to other non-staff appraisers. In 1979, the Commission discovered that Crain had received assistance from Sample in preparing the appraisals, and had paid Sample twenty-five percent of his fees, after deducting expenses. Neither Crain nor Sample notified the Commission of the assistance or the payments. No one raised any questions concerning the competency of the appraisals, which were used to acquire property, until 1979. No problems have been experienced based on any alleged incompetency. Sample resigned in 1979. He reported all payments from Crain on his income tax returns. In 1980, Sample pled guilty in U.S. District Court to two counts of mail fraud in mailing two checks to Crain in payment of appraisals furnished the Commission, and received a one year sentence which he has served. The stipulation confirms the settlement with Crain.

Among the exhibits attached to the stipulation was a job specification for Sample's position, which showed that his duties were to coordinate property appraisal, acquisitions, and management in accordance with department policy. The Commission's policy on outside jobs, also attached to the stipulation, provided that while it was undesirable for employees to hold additional jobs, they would be permitted if they did not: interfere with job performance; reflect discredit on the department; involve work with or for persons doing business with the department; involve work in the professional fields of engineering, law, or land surveying; or involve the use of state equipment or materials. The final clause states, "Employees will be held responsible for the close compliance with this policy."

The case was tried before the court without a jury. The trial court entered judgment in favor of defendant. Initially we note that when a case comes to us on stipulated facts, we need consider on review only whether the trial court's determination states the proper legal conclusions upon the stipulated facts, provided all ultimate facts or factual inferences have been stipulated. *McHenry v. Claspill*, 545 S.W.2d 690, 693 (Mo.App.1976). We conclude that the trial court erred as a matter

of law in finding for defendant under the stipulated facts. In the trial court and on appeal, defendant has maintained that the Commission suffered no damages, in that it received competent appraisals from Crain, who was paid fees typical of those paid to other appraisers.[1] However, defendant's argument ignores the law of agency. RESTATEMENT (SECOND) OF AGENCY (1957) sets forth a number of principles applicable to our case.

Section 391 states:

Unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency without the principal's knowledge.

\* \* \* \* \* \*

Comment:

e. *Evidence.* The receipt of anything of a substantial nature from an adverse party to a transaction is evidence that the agent is acting on behalf of such person and is sufficient, without more, to sustain a judgment against the agent....

Section 403 provides:

If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal.

\* \* \* \* \* \*

Comment:

b. *Elections of principal.* The principal has a cause of action either for a breach of contract or for a tort, as a remedy for damage caused by the violation of any duty of loyalty on the part of the agent. The principal may also charge the agent with anything which the agent receives as a result of the violation of duty, its value or its proceeds. The extent to which a principal has both rights is stated in Section 407....

Section 407 states:

(1) If an agent has received a benefit as a result of violating his duty of loyalty, the principal is entitled to recover from him what he has so received, its value, or its proceeds, and also the amount of damage thereby caused; ...

(2) A principal who has recovered damages from a third person because of an agent's violation of his duty of loyalty is entitled nevertheless to obtain from the agent any profit which the agent improperly received as a result of the transaction.

Section 388, Comment a. provides:

a. Ordinarily, the agent's primary function is to make profits for the principal, and his duty to account includes accounting for any unexpected and incidental accretions whether or not received in violation of duty. Thus, an agent who, without the knowledge of the principal, receives something in connection with, or because of, a transaction conducted for the principal, has a duty to pay this to the principal even though otherwise he had acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount....

 Numerous Missouri cases support the Restatement position that an agent who acts on behalf of an adverse party, is liable to his principal for amounts received in violation of his duty of loyalty. In *Garner v. Woods,* 24 S.W.2d 708, 709 (Mo.App. 1930) the court held that it was unnecessary for the petitioner to plead in fraud, in

---

1. We note that the allegation of plaintiff's petition, that defendant suggested Crain furnish appraisals for the Commission, was not supported by the stipulation of facts. In addition, the stipulation included no reference to "kickbacks." However, in defendant's proposed conclusions filed with the trial court, he stated:

The payments to Crain were for appraisals, which, if not done by Crain would have been done by someone else for the same price. The result of the kickback was that Crain received less money, not plaintiff getting less value.... At most, they [damages] would be the amount of his "kickback", an amount incapable of determination based on the evidence before this court, as already noted.... Had there been no kickback arrangement, plaintiff would still have paid the same price, for the same appraisals, all of which were successfully used to acquire properties.

order to recover profits made by an agent by reason of a breach of trust, stating "An agent cannot serve two masters. If he undertakes to act for himself, and at the same time for his principal, and reaps an advantage by his double dealing, the law will take it from him...." (citation omitted). *Id.* *Meek v. Hurst,* 223 Mo. 688, 122 S.W. 1022, 1024 (Mo.1909), clearly expresses the rationale for imposing high standards on agents, stating:

> The doctrine of law that forbids an agent to buy from or sell to himself is not necessarily based on the idea that such deal in dirt is (to speak colloquially) a "dirty" deal; ... But it is rather based on the idea of closing the door to the temptation to commit fraud.

Where an agent puts himself in a position antagonistic to his principal, speculates in the subject of his agency, or secretly deals with property to the disadvantage of his principal he forfeits his right to a commission and must account for his profits. *Utlaut v. Glick Real Estate Co.,* 246 S.W.2d 760, 763 (Mo.1952). Furthermore, an agent will not be permitted to justify a violation of his trust and retain the fruits of his fraud by pleading that the principal was willing to pay more than the seller asked for property entrusted to the agent. *Groh v. Shelton,* 428 S.W.2d 911, 917 (Mo.App. 1968).

■ Missouri law also provides that in the situation where a party to a transaction, knowing that an agent is already employed by a principal, employs the agent on his own account, the first principal may rescind the contract; or he can affirm it and recover from the other party the damage caused by the fraud; or, at his election recover commissions or improper gratuities paid to the agent by the other party. *Har-*

*ry M. Fine Realty Co. v. Stiers,* 326 S.W.2d 392, 401 (Mo.App.1959), quoting RESTATEMENT (SECOND) OF AGENCY § 313 (1957).

In the present case, plaintiff's position is strongly supported by the law of agency. The stipulated facts clearly reveal that defendant, a public employee entrusted with substantial responsibility, breached his duty of loyalty to his principal by secretly dealing with an adverse party for his own advantage. Moreover, Sample flagrantly violated written department policy specifically prohibiting outside employment with persons doing business with the department.

Defendant cannot seriously maintain that in his dealings with Crain, Crain did not occupy a position adverse to plaintiff. Defendant's duty of loyalty required objectivity in assessing the quality of Crain's appraisals. Such objectivity was surely undermined by Sample's participation in their preparation. We need not find that Sample's employment with Crain involved kickbacks, that Crain was unqualified to perform the appraisals, or that Crain was hired at defendant's suggestion, in order to support this holding. Assuming, under the stipulated facts, that defendant's assistance to Crain involved fully independent employment, Sample nevertheless breached his duty to plaintiff.

■ The trial court erred in finding for defendant. Plaintiff is entitled to recover for secret profits and commissions paid to defendant by Crain.[2] That amount cannot be determined from the record. Therefore, we remand to the trial court for the purpose of determining plaintiff's damages.

**2.** Much of defendant's argument on appeal is based upon a claim that plaintiff failed to prove all the elements of fraud. It is unnecessary for us to make a determination as to this. Defendant overlooks the fact that after plaintiff brought its initial petition against Crain and Sample, the suit was settled as to Crain, whereupon plaintiff and defendant entered into a stipulation of facts which was submitted to the court. These stipulated facts were sufficient to show that plaintiff was entitled to recover as a matter of law, because of defendant's breach of duty to his principal. In submitting the stipulation of facts, which in effect constitutes an amendment by consent of the pleadings, defendant has waived any complaint regarding plaintiff's theory of recovery on appeal. *See, Twiggs v. National Old Line Insurance Co.,* 581 S.W.2d 877, 880 (Mo.App.1979).

Reversed and remanded with instructions.

CRIST, J., concurs.

CLEMENS, Senior Judge, dissents.

CLEMENS, Senior Judge, dissenting.

I would affirm. This on the principle of a wrong without damage.

The plaintiff Commission stipulated that the amounts paid here to appraiser Crain were typical of other amounts paid for appraisals, and also stipulated the Commission had experienced no problems in acquiring easements based on Crain's appraisals. Thus, the Commission was not damaged by Crain's paying part of his fee to Sample.