[No. 27537. Department One. November 27, 1939.]

PUGET MILL COMPANY, *Appellant*, v. GEORGE P. DUECY, *Respondent*.[1]

*McMicken, Rupp & Schweppe*, for appellant.

*Mulvihill & Anderson*, for respondent.

[1]Reported in 96 P. (2d) 571.

Millard, J.—On the theory that defendant's removal of sand and gravel from land in Snohomish county, sold to defendant by plaintiff under an executory written contract, constituted a breach of a provision of the contract which reserved unto plaintiff seller absolute rights to all minerals in or upon the land, plaintiff brought this action to restrain defendant from further removing sand and gravel from the land covered by the contract of sale and to recover the value of all sand and gravel, theretofore removed by defendant from the land in question. Upon the ground that the complaint did not state facts sufficient to constitute a cause of action, defendant demurred, which demurrer was sustained. The plaintiff elected to stand upon its complaint, whereupon judgment of dismissal was entered. Plaintiff appealed.

The complaint alleges that respondent purchased, under executory written contracts (neither contract is incorporated in or by reference made a part of the complaint), two parcels of land in Snohomish county from the appellant. Each contract contains a provision reading as follows:

"The Seller hereby reserves unto itself, and unto its successors and assigns, the full, complete and absolute rights to all oils, gases, coal, minerals, metals and fossils of every name and nature which may be in or upon said land, or any part thereof, with the right of entry upon said land to prospect and explore for oils, gases, coal, minerals, metals and fossils of every name and nature, and also to take, mine and remove the same; provided, however, said Buyer, his successors, heirs and assigns, shall be reasonably compensated for all damage done to the surface of said land and the improvements thereon in carrying on any such operations."

The complaint further alleges that the respondent, contrary to the contractual provision just quoted and

without the consent of the appellant, engaged in the operation of removing from the two tracts of land large quantities of sand and gravel.

The allegations of fact, together with the reasonable inferences therefrom, in the complaint are admitted by the demurrer to be true; that is, the demurrer admits the truth of all well pleaded facts as well, also, as every legitimate inference deduced from such facts. 1 Bancroft's Code Pleading, 365.

The rule as to admissions by demurrer is subject to the qualification that omitted circumstances which are indispensable to the cause of action are not confessed; and any inference of fact which is not presumed or which may not be necessarily inferred from the facts alleged is not admitted. 1 Bancroft's Code Pleading, 296, 297.

"For the purpose of testing the sufficiency of the complaint to state a cause of action, a demurrer admits the truth of all facts well pleaded, but it does not admit conclusions of law, nor all conclusions which may be drawn from such facts by the pleader." *Morton v. Aurora*, 96 Ind. App. 203, 182 N. E. 259.

The rule is well stated in *Matthews v. Oklahoma Pub. Co.*, 103 Okla. 40, 219 Pac. 947, to the effect that a demurrer only admits the truth of the facts pleaded, but does not admit the truth of the inference of the pleader based on the facts pleaded unless the facts themselves are sufficient to authorize such inference. See, also, *Torgerson v. Minneapolis, St. P. & S. S. M. R. Co.*, 49 N. D. 1096, 194 N. W. 741; and 21 R. C. L. 508.

In *Hester v. Thomson*, 35 Wash. 119, 76 Pac. 734, we held that a motion to quash a writ of mandamus for want of sufficient facts performs the office of a demurrer and only admitted the facts stated and not the conclusions drawn therefrom by the pleader; that

a conclusion that defendants acted arbitrarily was unavailing in the absence of facts in the petition for the writ disclosing such action.

Averments in a pleading as to the meaning and interpretation of a writing made a part of such pleading are not admitted by a demurrer. *Crockett v. McLanahan,* 109 Tenn. 517, 72 S. W. 950, 61 L. R. A. 914.

"For the purposes of a demurrer, all allegations (not absurd or impossible) of substantive fact well pleaded are taken as true. But this doctrine goes hand in hand with another, *viz:* that for the purposes of a demurrer these allegations of the bill announcing mere conclusions of law are not admitted; and, akin to the last proposition, there is another, *viz.:* that the pleader's construction and interpretation of a written instrument lying at the root of his cause of action and set forth in the bill are not taken as true on demurrer. To the contrary, it is for the court, not the pleader, to put a construction upon an unambiguous and entire contract pleaded as the basis of recovery or relief, as here." *Meek v. Hurst,* 223 Mo. 688, 122 S. W. 1022, 135 Am. St. 531.

"The averments of the bill as to the purport and meaning of the provisions of the indenture, the object of their insertion in the instrument, and the obligations they imposed upon the corporation and the trustees, and the rights they conferred upon the plaintiff when his contract was approved, are not admitted by the demurrer. These are matters of legal inference, conclusions of law upon the construction of the indenture, and are open to contention, a copy of the instrument itself being annexed to the bill, and, therefore, before the court for inspection. A demurrer only admits facts well pleaded; it does not admit matters of inference and argument however clearly stated; it does not admit, for example, the accuracy of an alleged construction of an instrument, when the instrument itself is set forth in the bill, or a copy is annexed, against a construction required by its terms; nor the correctness of the ascription of a purpose to the par-

ties when not justified by the language used." *Dillon v. Barnard*, 88 U. S. (21 Wall.) 430, 22 L. Ed. 673.

Inasmuch as a pleading is construed on demurrer to allege all the facts that can be implied by fair and reasonable intendment from the facts expressly stated—a statement of a necessary substantial fact which has been omitted can not be read into a pleading—it follows that there must be sufficient facts stated to furnish a basis for the implication or inference. Only inferences that logically and necessarily follow from the facts pleaded are carried into the pleadings. A fact is not well pleaded when it is to be inferred only as a conclusion from other facts stated which are not inconsistent with an opposite conclusion. 49 C. J. 112.

■■ The appellant reserved unto itself absolute rights to "all oils, gases, coal, minerals, metals and fossils of every name and nature which may be in or upon said land." The word "minerals," standing alone, might by itself, under a broad, general, popular definition, embrace the soil, hence include sand and gravel, and all that is to be found beneath the surface. Under a strict definition, it might be limited to metallic substances. Under a definition coupling it with mines, it would include all substances taken out of the bowels of the earth by the processes of mining. See *Staples v. Young*, 1 Ir. Rep. 135.

"Speaking generally, the term 'minerals' signifies all natural inorganic bodies, but it is apparent that this is the broad and scientific sense in which the term is used, as contra-distinguishing such bodies from things of an organic nature. In this broad sense the term includes in its meaning such substances as limestone, silica, rock, sand and clay—in fact, all matter which is not vegetable or animal. It is obvious, however, that the legal meaning of the term is more restricted, and in what has been called the commercial sense,

the word 'mineral,' having reference to its supposed etymology of anything mined, has been defined as any inorganic substance found in nature, having sufficient value separated from its situs as part of the earth to be mined, quarried or dug for its own sake or its own specific uses. Under this definition it has been held that a reservation in a deed of the 'coal and other minerals' does not include common mixed sand. Under a definition coupling the word with mines it covers all substances taken out of the bowels of the earth by the processes of mining; and, in this sense, it has been held that the term would embrace granite. In the law the word is used in so many senses, dependent upon the context, that the ordinary definitions throw but little light upon its signification in a given case. Thus, the scientific division of all matter into the animal, vegetable, or mineral kingdom would be absurd as applied to a grant of lands, since all lands belong to the mineral kingdom, and therefore could not be excepted from the grant without being destructive of it. On the other hand, a definition which would confine it to the precious metals—gold and silver—would so limit its application as to destroy at once half the value of the exception. The most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained." 18 R. C. L. 1093-1094.

In *Waring v. Foden*, 1 Ch. Div. [1932] 276, 86 A. L. R. 969, the plaintiff endeavored to obtain a declaration that all sand and gravel situate within, or under, certain lands conveyed by him by deed to the defendant were the property of the plaintiff by virtue of the exception in the conveyance of "all mines, minerals and mineral substances within or under the same." The English court of appeal held that sand and gravel were not "minerals" or "mineral substances" in the vernacular of the mining world, the commercial world, or landowners; and as sand and gravel constitute the ordinary soil of the district, it

would be a negation of the substance of the transaction to hold that all sand and gravel, which were very generally a part of the soil and subsoil of this farm and worked and obtained from the surface, were excepted from the grant and remained the property of the plaintiff.

The word "mineral," or the word "minerals," is not a definite term and is susceptible of limitations or extensions, according to the intention with which it is used. *Glasgow v. Farie* (1888), L. R. 13 A. C. 657, 17 A. L. R. 157, 58 L. J. P. C. (N. S.) 33, 60 L. T. (N. S.) 274, 37 Week Rep. 627, 17 Eng. Rul. Cas. 485.

In *State ex rel. Atkinson v. Evans,* 46 Wash. 219, 89 Pac. 565, 10 L. R. A. 1163, there is language tending to commit us to the rule that the term "minerals" as used in § 33 of Art. II, of our constitution means, at least primarily, all substances (other than the agricultural surface of the ground) which may be extracted from the earth for profit, whether it be solid as stone or liquid as, for example, petroleum oil, etc. That is a too liberal construction, as it is clear that the term "minerals" does not include everything embraced in the mineral kingdom as distinguished from what belongs to the animal and vegetable kingdoms; since, if it did, it would include the soil itself. See Annotation 17 A. L. R. 156 *et seq.* The better rule is that each case must be decided on the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained. The complaint in the case at bar does not disclose what the language of the contracts was other than that those contracts contained a provision reserving in the seller absolute rights to the "minerals."

In determining the meaning of the term "minerals," as employed in grants and reservations, it is essential that the court have before it all of the provisions of

the instrument making the conveyance and containing the reservation; otherwise, the intention of the parties as to what was being conveyed and what was reserved can not be ascertained. An apt authority is *Praeletorian Diamond Oil Ass'n v. Garvey,* 15 S. W. (2d) (Tex. Civ. App.) 698. In that case, the plaintiff lessee sought to restrain the defendant lessor from removing gravel under a lease granting all oils, gas, and "other minerals" on lessor's property. In holding that all provisions of the instrument must be considered in determining what property was included, the court said:·

"Appellant's first proposition is to the effect that the lease from Garvey to it included all minerals for which the land could be profitably worked, and hence included commercial gravel. In its brief it says: 'The question to be determined is whether or not the language "all the oil, gas and other minerals in and under" the particular described tract of land is broad enough to cover commercial gravel.'

"We do not think that the abstract question of whether or not gravel is a mineral is necessary to be determined. As we view it, the question is whether, if it be conceded that gravel is a mineral, it was the intention of the parties to convey same in the lease. Appellees plead and here insist that it was not within the contemplation of, and was not the intention of, the parties that gravel was included in the lease contract. The intention of the parties as to what was being conveyed in the lease must be gathered from the four corners of the instrument. All the provisions of the instrument must be considered. We think it evident, when the instrument as a whole is considered, that it was not the intention to convey gravel."

We cannot, viewing solely the reservation provision, determine whether the reservation on its face includes sand and gravel within the term "minerals." The intention of the parties in the execution of the contracts of sale is within the rule that the intention

of the parties must be gathered from an inspection of the contract without the aid of extrinsic evidence as an aid in the construction of the instrument. In 2 Devlin on Real Estate (Deeds), 1525, § 840, the rule is stated as follows:

"Every provision, clause, and word in the same instrument shall be taken into consideration in ascertaining the meaning of the parties, whether words of grant, of covenant, or description, or words of qualification, restraint, exception, or explanation."

In the construction of the contracts of sale in the case at bar, the real point is: What was the intention of the parties? The term "minerals" is susceptible of different constructions; hence, on demurrer, with only the reservation provision of the contracts before us, we are unable to ascertain the probable intent of the parties. Unless the contracts of sale clearly disclose intention on the part of the respondent and the appellant to reserve in the appellant absolute rights to all sand and gravel—that fact cannot be shown in the absence of the contract, and the demurrer does not admit as true appellant's construction that sand and gravel are embraced within the term "minerals" —sufficient facts have not been stated to constitute a cause of action.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.