## WINSETT et al. v. WATSON.
### No. 14887.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 21, 1947.

Rehearing Denied Dec. 19, 1947.

H. M. Muse, of Wichita Falls, for appellants.

Stine, Bunting & Stine, of Henrietta, and Benson & Benson, of Bowie, for appellee.

McDONALD, Chief Justice.

On April 16, 1943, M. G. Wolfe and others executed and delivered to Ola Mae Winsett a conveyance of an undivided interest in the oil, gas and other minerals in and under a certain 160 acre tract of land in Montague County. The granting clause of the deed of conveyance reads in part as follows: " * * * have granted, sold, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto the said grantee, an undivided 20/160 interest in and to all of the oil, gas and other minerals in and under, and that may be produced from, the following described land. * * *" The deed expressly grants, to quote from it, "the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing same therefrom." The deed recites that the land is under oil and gas lease in favor of a named oil company, and further recites that the sale is made subject to the terms of the lease, but conveys and includes 20/160 of all the oil royalty, and gas rental or royalty due and to be paid thereunder in so far as it covers said land. It further recites that 20/160 of the money rentals which may be paid to extend the term within which a well may be begun under the terms of such lease shall be paid to the grantee, and that in event the lease becomes cancelled or forfeited, an undivided 20/160 of the lease interest and all future rentals on said land for oil, gas and other mineral privileges

shall be owned by grantee, the grantee owning 20/160 of all oil, gas and other minerals in and under said land, together with 20/160 interest in all future rents.

On the same day the same grantors executed a similar conveyance of an undivided 20/160 interest in the oil, gas and other minerals in and under the same land to George Constandine and Nick Anagnos. The provisions of the two deeds are similar, except as to the names of the grantees.

It appears from the record that the owner of the oil and gas lease referred to in said mineral deeds has released same by an instrument in writing recorded in the deed records of said county.

On June 27, 1945, the owners of said land, other than the owners of the mineral interests conveyed by the two deeds just mentioned, conveyed by general warranty deed 111 acres of said 160 acre tract to O. W. Watson, the defendant in the present suit. The deed to Watson contains the following provision: "There is conveyed herewith and herein the surface of the above described land, together with all of the rock, gravel and sand, in, on, or under said land, but all other minerals in, on, or under said land are reserved to the Grantors herein with the usual rights of ingress and egress for the purpose of exploration, development and use for commercial purposes as outlined in mineral reservation pertaining to said land on record in Montague County, Texas, also excepting from this conveyance any minerals, sand, rock, or gravel heretofore conveyed as shown by Deed Records of Montague County, Texas."

The present suit is brought by the owners of the mineral interests conveyed by the two deeds above mentioned, against the said O. W. Watson. Plaintiffs' claim, briefly stated, is that they acquired an interest in the sand, gravel and rock on said land by virtue of the two mineral deeds. They allege that defendant has sold sand, rock and gravel from said land and has received therefor at least the sum of $10,000, and that plaintiffs' share of said money is one-fourth thereof, or $2,500, less their proportionate share of the cost of removing and marketing such sand, rock and gravel. The prayer of the petition is for an accounting, for judgment declaring that plaintiffs are the owners of their respective interests in the sand, rock and gravel on said land, and for judgment for their shares of the net proceeds of sales.

The trial court severed the suit for accounting from what might be termed the suit for title, and ordered that the latter be tried first. At the conclusion of a non-jury trial the court rendered judgment to the effect that plaintiffs owned no interest in the sand, gravel or stone in, on or under said land.

The precise question before us, to-wit, whether a conveyance of oil, gas and other minerals, or a reservation of same, includes sand and gravel, has received the most careful consideration in several cases. Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228; Puget Mill Co. v. Duecy, 1 Wash.2d 421, 96 P.2d 571; Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 141 N.E. 537; Waring v. Foden, [1932] 1 Ch. 276, 86 A.L.R. 969; Beck v. Harvey, 196 Okl. 270, 164 P.2d 399; State v. Hendrix, 196 Okl. 596, 167 P.2d 43. See also annotations in 17 A.L.R., at page 167; and 86 A.L.R., at pages 985 and 989.

In Kinder v. La Salle County Carbon Coal Co., supra, it was said, citing Northern Pacific Railway Co. v. Soderberg, 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575, that the word "minerals" is used in so many senses, dependent upon the context, that the ordinary definitions of the dictionary throw but little light upon its significance in a given case. It was further said, citing 18 R.C.L. 1094, that the most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained. It was also held proper to consider the construction placed upon the deed by the parties themselves.

In Waring v. Foden, supra, opinions were written by three members of the court. It is clear that all three judges considered that such a grant or reservation ought to be construed in the light of the surrounding circumstances. Citing an earlier case, it was said that the inquiry as to

658

the meaning of the word "minerals" was, What did the word mean in the vernacular of witnesses of three classes—the mining world, the commercial world, and the land-owners?

In Puget Mill Co. v. Duecy, supra, it was said the word "minerals" might, standing alone, under a broad definition, embrace the soil, hence sand and gravel, and all that was to be found beneath the surface, that under a strict definition it might be limited to metallic substances, and that under a definition coupling it with mines it might include substances taken out of the bowels of the earth by the processes of mining. It was declared that the word is not a definite term, and that it is susceptible of limitations or extensions, according to the intention with which it is used. The court rejected a contention that the term should be held to include all substances which may be extracted from the earth for profit, other than the agricultural surface of the ground, and held that the term does not include everything embraced in the mineral kingdom as distinguished from that which belongs to the animal and vegetable kingdoms, because, if it did, it would include the soil itself. It was held that the better rule is that each case must be decided on the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained.

In Beck v. Harvey, supra, the court, after referring to Waring v. Foden, supra, and other cases, said [196 Okl. 270, 164 P. 2d 401]:

"We believe the better rule to be announced in the foregoing cases to the effect that where, as in the case at bar, the conveyance or reservation uses the words mineral royalty the conveyance or reservation does not include gravel, although there is on the real property involved sand or gravel susceptible of commercial production and use."

In Lillington Stone Co. v. Maxwell, 203 N.C. 151, 165 S.E. 351, the court held that digging of gravel for commercial purposes was not "mining" within a statute authorizing a refund of tax on gasoline used exclusively in mining. The court quoted at length from U.S. v. Aitken, 25 Philippine 7, where it was said that commercial gravel should not be classed as a mineral.

In State v. Hendrix, supra, it was held that gravel was not included in a conveyance of "oil, petroleum, gas, coal, asphalt and all other minerals."

In Prætetorian Diamond Oil Ass'n v. Garvey, Tex.Civ.App., 15 S.W.2d 698, writ refused; and in Shell Petroleum Corp. v. Liberty Gravel & Sand Co., Tex.Civ.App., 128 S.W.2d 471, it was held that sand and gravel were not conveyed by a lease granting the oil, gas and other minerals in certain land.

In some of the cases it seems to have been thought that the meaning of the term "minerals" is a question of fact, although in Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217, it was held as a matter of law that the term "minerals" included oil and gas.

■ Appellants contend that the intention of the parties to include sand and gravel in the mineral conveyance is indicated by the above quoted provision contained in the deed conveying the 111 acres to appellee Watson, and particularly by the clause, " * * * also excepting from this conveyance any minerals, sand, rock or gravel heretofore conveyed as shown by the deed records of Montague County, Texas." To our minds the quoted provision indicates that the parties did not consider that "minerals" included sand and gravel, because there is excepted from the conveyance "minerals, sand, rock or gravel." The reasonable implication is that the parties did not consider that the term "minerals" included sand and gravel, else they would not have referred to the latter specifically after using the word "minerals."

■ There are many reported opinions interpreting the meaning of the term "minerals", and there is much conflicting language in them. But under the pronouncements made in the above cited cases, involving sand and gravel, the trial court in the case before us was justified in finding, as set out in his judgment, that the

parties to the mineral deeds did not intend that sand, gravel and stone should be conveyed by them.

The judgment is therefore affirmed.