**M. M. GUINN, Appellant,**

v.

**J. P. ACKER, Jr., Appellee.**

**No. 456.**

Court of Civil Appeals of Texas, Tyler.

Feb. 12, 1970.

Rehearing Denied March 19, 1970.

**550**

Gordon Wellborn & Rex Houston, Gordon R. Wellborn, Henderson, for appellant.

Norman, Rounsaville, Hassell & Spiers, John B. Spiers, Jacksonville, for appellee.

McKAY, Justice.

Suit was brought by appellee against appellant for a declaratory judgment to construe the terms of a deed executed by W. M. Swearingen to R. C. Sherman dated September 12, 1941, conveying an undivided one-half (½) interest in and to all of the oil, gas and other minerals in and under and that may be produced from 86½ acres of land in Cherokee County, Texas.

Appellee contended the language of the deed: "oil, gas and other minerals" should be construed to include iron ore. Both appellee and appellant filed motions for summary judgment. The trial court overruled appellant's motion and sustained appellee's motion and entered judgment for appellee that he is the owner of an undivided one-half of the iron and iron ore in and under and that may be produced from the land involved in this suit.

Appellant's first three points (briefed together) complain of the action of the trial court in holding, as a matter of law, that the conveyance of oil, gas and other minerals conveyed surface minerals such as iron and iron ore because (1) the intention of grantor and grantee was to sell or purchase oil, gas and similar minerals and not surface minerals; (2) the rule of construction of ejusdem generis applies in determining the intention of the parties; and (3) the trial court disregarded affidavits attached to appellant's reply to appellee's motion for summary judgment to the effect that only one-half of the oil, gas and similar minerals were intended to be conveyed and that no surface minerals were sold.

Iron ore in Cherokee County is found near the surface, and in places, the ore rock lies on top of the ground. These iron ore deposits lie from the surface to about fifty feet below the surface (for practical mining purposes) and extend more or less horizontally or with the contour of the earth's surface. In order to obtain the ore, it is necessary to "strip-mine" or "pit-mine" which requires the removal of the overburden of surface soil by bulldozing, and the ore is dug out with power shovels.

The record before us reveals that there were two operations producing pig iron during the Civil War in Cherokee County, another located at Rusk State Penitentiary and operated by convicts from 1883 to 1909, and fourth and fifth furnaces operating between 1890 and 1896 with one operating again in 1907 for less than one year. It is also shown that during World War II and some years thereafter, Sheffield Steel Company operated an iron ore beneficiating plant in Cherokee County where iron ore was mined in Cherokee County, crushed, washed, and shipped to Houston to make pig iron. The Lone Star Steel blast furnace near Daingerfield was constructed during World War II and has been employed in the making of pig iron from East Texas iron ore since that time. There is in the record an in-depth study of brown iron ores in eastern Texas—where the ores are found, where and when furnaces were operating—and other information as shown by the U. S. Department of the Interior Bulletin No. 903, published in 1938. This Bulletin, together with affidavits attached to both motions for summary judgment, shows that iron ore is found extensively in Cherokee County and in several other counties in eastern Texas. The affidavit of Paul H. Nichols, Consulting Geologist, attached to appellee's motion for summary judgment, states that iron ore in commercial quantities for use as blast furnace material in the making of pig iron exists in Cherokee County, while appellant Guinn, in his affidavit attached to his motion, says the iron ore in Cherokee County alone is not regarded as suitable iron ore for blast furnace purposes. However, there has been intermittent use of iron ore in Cherokee County and other counties in East Texas to make pig iron, but the history of its use indicates that war conditions affected its use and that during periods when the need for iron was not so critical, the furnaces did not operate except for short periods. This would indicate that the furnaces could not be made commercially profitable on a continuous basis.

For many years iron ore rock or iron ore gravel has been and is being used extensively as a foundation base in road building in the areas of East Texas where it is available. This use has been continued use and probably the principal use made of the material on a continuous basis. There has been some use made of iron ore rock as an ingredient for cement.

■ Iron ore in East Texas has a definite chemical composition expressed by the chemical formula "$Fe_2O_3H_2O$." We conclude that whether iron ore is commercially profitable for making pig iron or for road building, or the fact that it possesses a definite chemical formula are not controlling issues here. We will discuss appellant's first three points together.

The question which we are called upon to determine is whether the language "oil, gas and other minerals" includes iron ore. So far as we are able to discover, this question has not been decided by the Texas courts, and no cases from other jurisdictions have been presented or found.

■ The term "minerals" includes, in a technical sense, all natural inorganic substances forming a part of the soil. Many authorities have preferred to define a "mineral" as a substance having sufficient value to be mined, quarried, or extracted for its own sake. It has been held repeatedly by the courts that the term "minerals" in a grant or a reservation has no general definition and that in determining what is included in "minerals," the term must be construed in the light of the particular transaction and with reference to the instrument and its context. See 95 A.L.R.2d 845 and cases cited at pages 847–868.

In 58 C.J.S. Mines and Minerals § 155 page 324, we find the following language:

"* * * A grant or reservation of 'mines' or 'minerals' may, if from the language of the instrument and the surrounding circumstances such appears to be the intention of the parties, include

various particular substances such as chromate of iron, granite, gypsum, marble in place, paint stone, pulp stone, or shale.

"Limestone ordinarily is not included in a grant or reservation of minerals. * *

"Sand and gravel ordinarily are not included within a grant or a reservation of minerals * * *."

In 38 T.J.2d, page 703, we find the following:

"In wills, conveyances, reservations, and mining transactions, the words 'mineral rights' will be interpreted according to their ordinary and natural meaning when there is no manifestation of an intention expressed in the instrument to indicate use in a technical or scientific sense. This is the established rule in the absence of clear indications otherwise, because it gives effect to the intention of the maker of the instrument who is presumed to be familiar with the ordinary and natural meaning of the words used. * * *"

See also Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994 (1949); Atwood v. Rodman, 355 S.W.2d 206 (Tex.Civ.App., El Paso, 1962, err. ref., n. r. e.).

▮ Ejusdem generis means "of the same kind or species." It is a rule of construction to aid in ascertaining the meaning of a statute or written instrument, the doctrine being that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind, but it is only a rule of construction, and never overrules an intention that is clear. If ejusdem generis applies, then it would appear that since "and other minerals" is preceded by the words "oil, gas," that "and other minerals" means only "and other minerals of the same kind or species as oil and gas" and does not include iron ore.

We shall review chronologically the Texas cases which we deem to bear on the case

here, and then refer to such cases from other jurisdictions as appear to be applicable.

In the early case of Luse v. Boatman, 217 S.W. 1096 (Tex.Civ.App., Fort Worth, 1919, err. ref.), it is held that the reservation "all the coal and mineral on and in the above described land" included gas.

In another early case, Rio Bravo Oil Company v. McEntire, 128 Tex. 124, 95 S.W.2d 381 (1936), the Supreme Court held a reservation of "coal, mineral, stone, or any other valuable deposits" included oil and gas.

In Anderson and Kerr Drilling Company v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217 (Tex.Sup., 1940), the Supreme Court held a deed reservation:

"And the said N. J. and M. E. Johnson reserves ½ interest in all Minerells Paint Rock, &c found or will be found on said described tract of land * * *"

included the reservation of oil and gas. This case also discusses the ejusdem generis rule and then states:

"* * * whereas the rule is generally thus stated: 'General words *following* particular words, will not include things of a superior class'. * * * the rule of ejusdem generis is merely a rule of construction, an aid to interpretation when the intention is not otherwise apparent. * * *"

In Psencik v. Wessels, 205 S.W.2d 658 (Tex.Civ.App., Austin, 1947, err. ref.), it was held that sand and gravel were not included in a reservation of "* * * all mines and wells of, and all minerals of whatever description, be the same gaseous, liquid, or solid, in and under the lands hereinabove described; * * *."

The Court, in *Psencik,* supra, considered and quoted with approval the following, at page 659:

"* * * 'While the word "minerals" includes, in a technical sense, all natural inorganic substances forming a part of

the soil, the term is used in so many senses, dependent upon the context, that such a definition is obviously too broad, for it would throw little, if any, light upon what was meant in a particular case. So, to apply the word in the signification in which it is employed in the scientific division of all matter into the traditional three kingdoms, to a grant of land containing an exception of the minerals, would be absurd, since all land belongs to the mineral kingdom, and the exception could not be given effect without destroying the grant.' (Citing 36 Am.Jr., p. 283).

"This is a generally accepted legal principle. Its application to the varied instruments, documents and statutes that have been presented to the courts for construction, has (as might be expected) given rise to no little conflict, apparent or real, in the decisions of other jurisdictions.

\* \* \* \* \* \*

" \* \* \* (at page 660). No doubt every inorganic component of the earth's crust is legally *cognizable* as mineral, if the parties affected choose so to deal with it; and this no doubt is true regardless of whether it may be removed or extracted for commercial or other profitable purposes. We know of no rule which would deny the owner of the soil the right to sever the title of any such component from the general title to the soil. Such severance would unquestionably constitute a mineral title. The term 'legally cognizable as minerals' must therefore be restricted to such minerals and mineral substances as are commonly regarded as minerals as distinguished from the soil in general. \* \* \* "

The court held in Winsett v. Watson, 206 S.W.2d 656 (Tex.Civ.App., Fort Worth, 1947, err. ref.), that a deed conveying "an undivided $^{20}/_{160}$ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from, the following described land \* \* \* " did not include sand and gravel.

In the significant case of Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994 (1949), in an opinion by Justice Smedley, it is stated:

"It has been pointed out in several decisions that the scientific or technical definition of minerals is so broad as to embrace not only metallic minerals, oil, gas, stone, sand, gravel and many other substances, but even the soil itself. In one decision it is said that it is rare, if ever, that mineral is intended in the scientific or geological sense in the ordinary trading transactions about which deeds and contracts are made. (citing cases).

"The words 'the mineral rights' used in the will are to be interpreted according to their ordinary and natural meaning, there being nothing in the will manifesting an intention on the part of the testatrix to use them in a scientific or technical sense. This is the established rule because it gives effect to the intention of the testator, who is presumed to have been familiar with the ordinary and natural meaning of the words used in his will. (citing cases). \* \* \* This rule of interpretation has been applied to the word 'mineral' or 'minerals' used in conveyances and reservations, that is, it has been held that these words are to be understood as used in their ordinary and natural meaning unless there is a clear indication that they are intended to have a more or a less extended signification. (citing cases).

"In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement. Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word. (citing cases). \* \* \* The limestone on the land involved herein, having value only for building purposes,

underlying most if not all of the land at varying and usually shallow depths, outcropping in all of the ravines, sometimes found on the top of the surface and removed by quarrying after scraping off the overlying caliche or other top soil, is so closely related to the soil, so nearly a part of the very surface, the soil itself, that it is reasonably and ordinarily considered a part of the soil and as belonging to the surface estate rather than as a part of the minerals or mineral rights. (citing cases).

"Another reason supports the conclusion that the words 'the mineral rights' used in the will were not intended to include the rights to the limestone. It is that the limestone is recoverable only by quarrying or the open pit method which destroys the surface for agricultural and grazing purposes. The fact that the particular substance, although technically a mineral, is recoverable only in this way, and with this result, is not decisive of the question, but it is a factor which is used with others in determining that the substance is not included in a conveyance or reservation of minerals. (citing cases).

\*     \*     \*     \*     \*     \*

"Very recently this Court refused applications for writ of error in two cases, one construing a deed reserving 'all mines and wells of, and all minerals of whatever description, be the same gaseous, liquid, or solid,' and the other construing a deed conveying 'oil, gas and other minerals.' Psencik v. Wessels, Tex.Civ.App., 205 S. W.2d 658; Winsett v. Watson, Tex.Civ. App., 206 S.W.2d 656. The first case, in a thorough opinion by Chief Justice McClendon of the Third Court of Civil Appeals, held that the deed did not reserve sand and gravel, and the second case, in a thorough opinion by Chief Justice McDonald of the Second Court of Civil Appeals, held that sand and gravel were not conveyed. This Court by its unqualified refusal of the applications for writ of error evidenced its conviction that the principles of law declared in the two opinions of the Courts of Civil Appeals were correctly determined. Texas Rules of Civil Procedure, rule 483."

Cain v. Neumann, 316 S.W.2d 915 (Tex. Civ.App., San Antonio, 1958, n. w. h.), holds that a lease which sold and conveyed "all of the oil, gas, coal and other minerals in and under" the described land, with royalty provisions for oil and coal and a provision for other minerals, stating:

"\* \* \* 'If gas or other minerals are found, party of the second part agrees to pay to the party of the first part, one-tenth (1/10) of the market value of said gas or minerals so found and marketed.' \* \* \*"

included uranium whether lessor and lessee knew of uranium at the time of the lease since it was their express intent to convey "all" minerals. The court held that the rule of ejusdem generis was not applicable to the language of the lease. We conclude this is consistent with the rule of ejusdem generis for the logical reason that the rule could not apply where unlike minerals were specifically named prior to the use of the words "other minerals."

The case of Fleming Foundation v. Texaco, Inc., 337 S.W.2d 846 (Tex.Civ.App., Amarillo, 1960, err. ref., n. r. e.), holds that reservations and exceptions of oil, gas and other minerals do not include water although water is technically a mineral. The rule of ejusdem generis is approved with this language:

"'\* \* \* The maxim is held to be applicable "where an enumeration of specific things is followed by some more general word or phrase" and that where such situation exists "such general word or phrase is to be held to refer to things of the same kind." \* \* \*'

\*     \*     \*     \*     \*     \*

"We approve the holding of the Oklahoma Court in the case of Vogel et al. v. Cobb, 193 Okl. 64, 141 P.2d 276, 148 A.L.R. 774, where it held 'other minerals' referred to minerals of the same

generic class as oil and gas and did not include water. * * *"

The El Paso Court of Civil Appeals, in Atwood v. Rodman, supra, in 1962, was concerned with whether "oil, gas and other minerals" included limestone. The resume of the facts there indicates a similar situation as here in that limestone is found in abundance in many counties throughout South Central and Southwest Texas; that some limestone is on the surface, some with shallow overburden; that its properties are not rare and exceptional in character and do not possess a peculiar value which would give them a special value or classification; that caliche and limestone, as well as sand, clay, and gravel, are so closely related to the soil and so nearly a part of the soil itself that they are reasonably and ordinarily considered a part of the soil belonging to the surface estate; that they can be removed only by quarrying or the open-pit method which destroys the surface for agricultural and grazing purposes; that limestone of the same character is being used and sold for road building and that there is no appreciable difference in value, if any, between limestone used for making cement and that used for road building.

The Court in the Atwood case, supra, quotes from Winsett v. Watson, supra, in that

"'* * * It was held that the better rule is that each case must be decided on the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained.'"

The Atwood case also quotes with approval from Cronkhite v. Falkenstein, 352 P.2d 396 (Sup.Ct. of Okl.), as follows:

"'We conclude that by the use of the words in the mineral deed, "oil, gas," preceding other minerals, the latter term embraced only minerals of the same generic class as oil and gas, and did not include gypsum rock.'"

The Atwood case, supra, also quoted with approval from a Supreme Court of Mississippi case, Witherspoon ex ux. v. Campbell, 219 Miss. 640, 69 So.2d 384 (gravel case), as follows:

"'Of course, the ordinary oil and gas lease refers to the minerals that are to be explored for as being "oil, gas and other minerals", and under the doctrine of ejusdem generis the words "and other minerals" have reference to other minerals of like kind and character which are not a part of the soil, such as the oil and gas specifically mentioned. * * * We, therefore, think that it is clearly to the public interest, and a matter of fairness to a great majority of the landowners of this state and future purchasers of land, that if the term "minerals" is to include all of the gravel on the land the conveyance should specifically so declare.'"

Also quoted in *Atwood* is the Supreme Court of North Dakota in MacMaster v. Onstad, 86 N.W.2d 36, referring to Heinatz v. Allen, supra, as follows:

"'This decision suggests that the class of minerals conveyed by a mineral deed is limited to those which are valuable, are not a part of the soil and may be mined without destroying the surface. To the same effect is Eldridge v. Edmondson, Tex.Civ.App., 252 S.W.2d 605.'"

Southland Royalty Co. v. Pan American Pet. Corp., 378 S.W.2d 50 (Tex.Sup., 1964) opinion by Justice Hamilton, the latest expression by the Supreme Court of Texas, holds that the first royalty paragraph in the mineral lease reading:

"'1st. To deliver to the credit of lessor, free of cost, in the pipe line to which they may connect their wells, the equal one-eighth part of all oil produced and saved from the leased premises *and ⅛ of the net proceeds of potash and other minerals at the mine.*'"

includes gas. The granting clause included the words "oil and gas, potash or other minerals."

The Court in the Southland Royalty case, supra, uses this language:

" * * * 'Other minerals' used by itself could have no meaning. It only takes on meaning when used in connection with a certain specific mineral or minerals. Consequently, the term 'other minerals' need not always have the same meaning in the same instrument. Its meaning is determined by the specifically named minerals with which it is used."

Even though the Southland Royalty opinion states on page 54: " * * * the doctrine of ejusdem generis as applied to minerals has never been accepted in this state," the above quote from the case indicates that the court does follow a rule of construction that the meaning of the words "other minerals" is determined by the specifically named minerals with which it is used. It seems the rule of ejusdem generis cannot be applied when a grant or reservation specifically names minerals with unlike characteristics, and which would require different methods of mining. Luse v. Boatman, supra. We believe the Southland Royalty case can be distinguished from the case here. If Chief Justice Calvert's concurring opinion is interpreted to mean that "oil, gas and other minerals" includes iron ore or other surface minerals, it was dictum because it was not necessary to that decision, and that interpretation would be contrary to many other Texas decisions on surface minerals or those recovered by strip or pit mining. And neither Justice Calvert nor Justice Griffin in his dissent makes any reference to overruling the cases cited in this opinion relating to surface or near-surface minerals obtained by destroying the surface.

Carson v. Missouri Pacific Railroad Co., Arkansas Supreme Court, 1948, 212 Ark. 963, 209 S.W.2d 97, 1 A.L.R.2d 784, held that bauxite was not included in a reservation (in 1896) of "all coal and mineral deposits in and upon the said lands." Bauxite is generally mined by the open-pit method, and the court said such an operation would destroy the value of the land for farming purposes or any other purpose and that bauxite was not in contemplation of the parties when the reservation was made.

■   Considering all the authorities herein cited and quoted, together with many others reviewed, we conclude that the words "oil, gas and other minerals" do not include iron or iron ore in the instrument in question here for the following reasons:

1.   The rule of construction set out in the Southland Royalty case, supra, as well as the ejusdem generis rule would not include iron ore but would mean similar minerals or those of the same generic class;

2.   The language of the instrument is not ambiguous and therefore makes it appear that the intention of the parties was to include oil, gas and like minerals and not to include iron ore;

3.   The words "oil, gas and other minerals" should be given their ordinary and natural meaning unless there is an expressed intention in the instrument to indicate use in a technical or scientific sense to give effect to the intention of the parties who are presumed to be familiar with the ordinary and natural meaning of the words used;

4.   While iron ore in eastern Texas and in Cherokee County has been and is being used to make pig iron, it is not rare or exceptional in character nor does it possess a peculiar property giving it special value or classification different from the general soil or land in the same area;

5.   The iron ore in the area of the land involved herein, found on the surface and underlying most of the land at usually shallow depths, must be removed by the open-pit or strip-mining method after removing the overlying top soil or overburden, and is so closely related to the soil, so nearly a part of the very surface, the soil itself, that it is reasonably and ordinarily considered a part of the soil

and belongs to the surface estate rather than a part of the minerals or mineral rights; and

6. The open-pit or strip-mining method of removing iron ore destroys the surface for agricultural or grazing purposes, and the mineral estate would destroy the surface estate which result was not reasonably within the intention of the parties.

■ We, therefore, believe that it is clearly in the public interest and a matter of fairness to a majority of the landowners of this state and future purchasers of land, that if the language "oil, gas and other minerals" is to include iron and iron ore, the conveyance or reservation should so declare.

■ In addition to what we have said, it appears that from the beginning of the use of conveyances and reservations to separate the surface estate from the mineral estate in Texas, logic and reason would dictate that by the use of the words "oil, gas and other minerals," it was not intended that the mineral estate would destroy the surface estate.

Appellant's points one and two are sustained. Point three is overruled.

Point four complains of the granting of a summary judgment for appellee because there were disputed issues of fact. We do not agree. The only issue seems to be a legal question of interpretation of the language of the instrument here presented. Point four is overruled.

Point five is without merit as the record reveals a correction deed was executed to correct the description of the lands in question, and the trial court properly referred to such correction deed in his judgment.

For the reasons above set out, the judgment of the trial court is reversed, and judgment is here rendered for appellant.

Reversed and rendered.