**SLACK v. MAGEE HEIRS et al.**

No. 12366.

Court of Civil Appeals of Texas. Galveston.

Oct. 9, 1952.

Rehearing Denied Nov. 6, 1952.

Vinson, Elkins & Weems, Thomas Fletcher and Robert E. Morse, Jr., Houston, R. Richard Roberts, of Houston, of counsel, for appellant.

Price Daniel, Atty. Gen. of Texas, Sam W. Davis, Cr. Dist. Atty., W. K. Richardson, Asst. Cr. Dist. Atty., Knipp & Broady, E. A. Knipp, of Houston, for appellees.

CODY, Justice.

This was a suit in two counts brought by the Magee Heirs, joined by the State and Harris County as the statutory agent for the State, against the defendants, including appellant. The first count was in trespass to try title to the land described in appellees' (plaintiffs' below) petition, it being stated in the petition that the State and County claim no interest except a right of way across the land. The second count was for a declaratory judgment to settle and fix the nature and extent of the rights of the parties in any portion of the aforesaid land; and in the alternative, if it be determined that the defendants had an interest in the land over which the State claims a right of way, then that the court condemn a right of way across the land under authority of Article 3269, R.C.S.1925, Vernon's Ann.Civ. St. art. 3269, etc.—The defendants other than appellant were disposed of either upon their disclaimers, or upon stipulations.

Appellant answered with pleas in abatement; pleas to the jurisdiction; general denial; plea of not guilty; a special plea alleging that the property contained valuable building material of the reasonable value of $300,000; appellant also urged other special pleas. In order that these pleas be understood, we here digress to make the following statements:

The facts of this case make the action of the State to condemn the right of way unusual, if not unique, so far as the reported cases of this State go. These facts are:

A. In this action the State is concerned with constructing a multi-lane highway, 310 feet wide, across appellant's land. The highway was No. 73, and when completed, will connect Houston and Port Arthur. The highway, as engineered, is to be elevated about ten feet as it runs across appellant's land.

B. On October 7, 1939, E. A. Green and Albert Mills filed a plat of the Subdivision of San Jacinto River Estates No. 2, and, so far as procedure in such cases is concerned, thereby dedicated the streets shown on said plat to the public. For the determination of one of the principal points involved in this case, it is sufficient to say that Eddington Drive is shown upon said maps as a street 60 feet wide, running in an east-west direction. Appellant without dispute owns the surface estate in the land over which the State is constructing said highway, described in appellees' petition. And included

within the land so described is a portion of Eddington Drive. If Eddington Drive is owned by the State, the appellant owns the land included therein, subject to the State's right of way. If Eddington Drive, for the reasons stated by appellant, is not owned as a right of way by the State, then appellant owns the fee-simple title to the surface therein, free of a right of way claim.—In any case, the portion of the land described in appellees' petition, which is 310 feet in width, includes a section of Eddington Drive to its full width of 60 feet.

C. Prior to the filing of the plat to said Subdivision, the mineral estate in the land covered by said Subdivision was severed from the surface estate. Green and Mills did not own any portion of the mineral estate, but only owned the surface estate when they filed the plat aforesaid. None of the owners of the mineral estate joined in the dedication of the plat. For the purposes of brevity and simplification on this appeal, we will state that the Magee Heirs own 15/16ths of the oil, gas and mineral estate, and that appellant owns the remaining 1/16th,—this statement is made for the purposes of simplifying this appeal only, and is not made to bind any person.

D. The State acquired right of way deeds from the Magee Heirs, who, it is undisputed, did not own any interest in the surface estate.

E. The question of Eddington Drive aside, the land of appellant, which the State sought to condemn, consisted principally of a portion of the tier of lots in Block 29 of the Subdivision.

F. The Subdivision at the point of appellant's land on which the State is constructing the multi-lane highway was swampy, marsh land, having an elevation above sea level of from five to ten feet, and was subject to inundation by exceptionally high tide, and subject to overflow by the San Jacinto River. At the time of the trial, the topsoil of about half of the property here involved had been removed to be used as building material, to a depth of from 4 to 6 feet. A Mr. Shields, the sales agent for the owners, testified for appellant that he had seen the land overflowed for a depth of ten feet "a couple of times."

G. Sales of the land were made with reference to the plat in all instances. Except on Monmouth Drive, which is on the outer fringe of the eastern part of the Subdivision, the land was held in the form of acreage, held under fence, and used to run cattle on, or for purposes other than a residential addition. Appellant used his land both to run cattle on, and to extract sand and building material.

So much with reference to the digression made so that appellant's pleas may be understood.

It was appellant's contention, among others, that with respect to the plat:

(a) That the dedication was invalid; (b) that same had been abandoned; (c) that he was not bound thereby; and (d) that in any event the use of Eddington Drive for forming a portion of a multi-lane highway, was for a purpose different from that for which it had been dedicated, and the taking of same for such purpose was not an acceptance.

The trial court held as a matter of law that the dedication was valid and binding, and so charged the jury. The following statement is taken substantially from appellees' brief:

Four special issues were submitted to the jury, inquiring (a) as to the cash market value of the parts of the lots and blocks owned by appellant within the proposed right of way; (b) the value thereof after the taking of such right of way; (c) the market value of the remainder of appellant's land exclusive of the right of way; and (d) the value of the remainder after the taking of the right of way. The jury found that those portions of the lots and blocks owned by appellant which were included within the right of way were worth before the taking $700 per acre; after the taking $5 per acre; and found that the remainder of appellant's land was worth $750 per acre, both before and after the taking of the right of way.

The judgment awarded appellant damages in the sum of $10,242.22, and title to the surface estate and one-sixteenth of the mineral, subject to the dedication and subject to the adjudication of an easement and right of way to the State.

Appellant predicates his appeal upon twenty-three formal points, covering seven pages of his brief. Manifestly his points cannot be treated individually, but will be ruled on either specifically or disposed of by necessary implication.

█ The Trial Court had jurisdiction to try this case. Appellees' petition contained a count in trespass to try title, and sought a declaratory judgment determining the rights of all parties in the land described in appellees' petition. It is not open to question that the State in good faith contended that the plat and dedication of the aforesaid Subdivision was valid and binding, and that, in consequence, the State owned a right for street purposes, 60 feet wide, within, and forming a portion of the 310 foot right of way upon which it proposed to construct the multi-lane highway. Appellant contested this claim. The court, as stated above, held as a matter of law that the plat and dedication was binding, and that, to that extent, the State owned for street purposes the portion of Eddington Drive contained within the 310 feet to be used to construct said multi-lane highway. The interest claimed by the State was an interest in land. So the only court which had jurisdiction to pass upon this portion of the controversy was the District Court. We cite as sufficient authority on this point, if authority be needed, Blair v. Archer County, 145 Tex. 102, 195 S.W.2d 348. Had appellant disclaimed owning the right of way (Eddington Drive) claimed by the State, and thereby left remaining as the only controversy between the parties the sole question of the value of the land sought to be condemned, exclusive of Eddington Drive, a question of jurisdiction would have been presented which is not in the case which is now before us.

Until 1889, the County Court had exclusive jurisdiction over proceedings to condemn land for public purposes. At that time there were no district courts in the State which were in continuous session throughout the year. And the then exclusive proceeding for exercising eminent domain was expeditious and inexpensive. Prior to that time, land values throughout the State had been generally low; and rail-roads frequently had not troubled to institute condemnation proceedings, but simply built their railroads across both public and private domain; and landowners frequently would not attempt to prevent railroads from constructing their rights of way across land, without first paying therefor. Under such circumstances, after a railroad had been constructed, and the landowner brought an action in trespass to try title, the railroad could not cross-act to condemn the right of way upon which the railroad had theretofore constructed its line, but had to institute a separate proceeding in the County Court.

Since the cardinal principle of our blended system which is designed, within reason, to provide against a multiplicity of suits, the Legislature thought proper in 1889, to enlarge the jurisdiction of the district court so that the controversy between the railroad and landowner could be disposed of in a single proceeding, and enacted what is now Art. 6338. In the recodification of the Statutes of 1925, the provisions of Art. 6338, in a broadened and modified form, were brought forward and inserted in the Title on Eminent Domain, as Art. 3269, without disturbing the integrity of Art. 6338, which still remains in full force.

In 1931, Art. 3269 was amended, and further enlarged to extend the jurisdiction of the district court in condemnation proceedings. The caption to this amendment makes it certain that the purpose of the Legislature was to further recognize the supervening public policy of our law in practice and procedure to provide against a multiplicity of suits. The caption reads in part, "An Act to amend Article 3269 * * * providing for procedure * * * in suits against those having the right of eminent domain for property * * *." The emergency clause to said amendment further confirms this purpose of the Legislature. Then, in 1945, the Legislature again amended Art. 3269, and it now reads, so far as here material, "When the State of Texas, or any county * * * is a party, as plaintiff, defendant or intervenor, to any suit in a District Court, in this State, for property * * * occupied by them or it for the purposes of which they or it have

the right to exercise such power of eminent domain, * * * the Court in which such suit is pending may determine the matters in dispute between the parties, including the condemnation of the property and assessment of damages therefor, upon petition of the plaintiff, cross-bill of the defendant or plea of intervention by the intervenor * * *; and in such event the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he * * * fails to establish such claim * * *."

Before the Article was amended in 1945, it had been held by the Supreme Court that the parties which had then been given the right to cross-act for condemnation of the property, did not have to be in pedal possession of the property involved. Brazos River Conservation and Reclamation District v. Costello, 135 Tex. 307, 143 S.W.2d 577, 130 A.L.R. 1220; Brazos River Conservation and Reclamation District v. Adkisson, Tex.Civ.App., 173 S.W.2d 294, error refused. We disagree with appellant's contention that the Supreme Court's holding is limited to instances in which injunction is sought, by reason of the language of the Statute. Certainly the interpretation placed upon the Article by the Supreme Court is, as we have indicated, though injunction was involved in the case. We believe the purpose of the Legislature in so amending Art. 3269 was as broad as the Supreme Court indicated, and sufficiently broad to enable the District Court to dispose completely of such cases as this, in one proceeding. The fact that appellant had the land fenced did not prevent the State from being in constructive occupancy of Eddington Drive, if, as the State contends, the State had title thereto for right of way purposes. Whether the State had such possession is another question, which it was proper to determine in this case.

We hold that it was not necessary, to a valid dedication of the Streets in the Subdivision, that the owners of the surface estate in the Subdivision also have the owners of the mineral estate join in the dedication. It is now well settled in this State that where the mineral and surface estates have been severed, that each estate may be one in freehold, or fee simple. Whether land is divided horizontally or vertically, the resulting estates are fee simple ones. See Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607; Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501; Wallace v. Hoyt, Tex. Civ.App., 225 S.W. 425, error refused; Yates v. State, Tex.Civ.App., 3 S.W.2d 114. Here the dedicators of the Subdivision owned the fee simple to the surface estate. A dedication of a right of way does not affect the mineral estate. Parker v. Standard Oil Co. of Kansas, Tex.Civ.App., 250 S.W.2d 671, 679. The construction of the right of way would not interfere with the right of the owners of the oil rights to develop the mineral estate. County School Trustees of Upshur County v. Free, Tex. Civ.App., 154 S.W.2d 935, error refused. Had the minerals involved been asphalt or of such a character as to be outcropping and which, therefore, required the removal of the topsoil in order to mine same, a different case would have been presented. See Asphalt Belt Ry. Co. v. Uvalde Rock Asphalt Co., Tex.Civ.App., 256 S.W. 675. There is no oilfield near the Subdivision, and it is not contended that the mineral estate has any prospective value except for oil rights. It would not be necessary, in order to recover oil in place, to sink wells where the highway is to be constructed. However, in view of the holding in the Asphalt Belt Ry. Co. case, supra, the owners of the mineral estate were proper parties.

It is well settled in this State that, "In every dedication the public is the real transferee of the use of the land and the only transferee necessary to the transaction, whether the dedication be effectuated through the medium of a conveyance * * and whether no conveyance be made at all", quoted with approval from 14 Tex.Jur. 689, Sec. 6, in Miller v. Dallas County, Tex.Civ. App., 71 S.W.2d 377, 380. The cited case further, on the same page, quotes from Tex.Jur., "Nor is it material that the designated streets have not yet been thrown open to the public * * *." In a recrudescence of the litigation between the same parties, it was contended that Dallas County

had abandoned the property which had been the subject matter of the former suit, subsequent to the determination of the former suit. The Supreme Court held, "The material question is the intention to abandon, and that intention must be established by clear and satisfactory evidence. Mere nonuser of an easement will not extinguish it." 140 Tex. 242, 166 S.W.2d 922, 924. Our Court held through Justice Graves that nonuser of a street for more than thirty years after it had been dedicated did not constitute a failure to accept, or an abandonment. Coombs v. City of Houston, Tex.Civ.App., 35 S.W.2d 1066. In Gibson v. Carroll, 180 S.W. 630, the San Antonio Court of Civil Appeals held that a recorded map of a street which was covered by the waters of Corpus Christi Bay at the time was a valid dedication, and when it became usable by reason of accretion, or filling in, and was used for the purposes it was dedicated to, the dedication was irrevocable.

In none of the cases cited by appellees, and in none examined by us, have the facts been what they are in this case. In every case the acceptance of right of way dedication has conformed to the offer to dedicate, as presented by the dedication, and plat. The proof in this case shows that the Subdivision, for the main part, occupies what was the former bed of the San Jacinto River. That accounts for the sand deposits on appellant's land. That indeed accounts for the abandonment of the greater portion of the Subdivision for a residential project. If the San Jacinto should change its course again, and pass at such a distance from the Subdivision that it would no longer overflow the Subdivision, and if the waters of the Bay should recede so far that exceptionally high tides would not cover it, the Subdivision could become reactivated as a residential project, and the streets thereof be used as an integral part of the Subdivision. It is true that appellant purchased his property subject to whatever rights the State or the public held to the area delineated upon the map as Eddington Drive. But it is equally true that he acquired the fee title thereto, with the right to make such use of Eddington Drive, as was not inconsistent of the right of the public to make the use thereof contemplated by the dedicator thereof. The area which is included in dedicated streets, within the property described in appellees' petition, to which appellant owns the fee surface estate subjected to street purposes by the dedicators is 4.187 acres.

The Supreme Court held in City of Ft. Worth v. Burnett, 131 Tex. 190, 114 S.W.2d 220, 223: "'A dedication must always be construed with reference to the object with which it was made. A different construction is placed on dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted.'" Therefore, the County as trustee for the public had the right to accept the streets in the Subdivisions, in accordance with the map. When appellant was confronted with the facts in this case, that the Subdivision had been abandoned as a residential project, except along Monmouth Drive, as stated above, and the streets within the area he purchased could never be used as an integral part of the project, absent such extraordinary natural events indicated above, as would be tantamount to a miracle, he acquired the fee to the surface of Eddington Drive, subject to the offer made to dedicate it as delineated upon the map.

Eddington Drive occupies approximately the north 60 feet of the 310 foot multi-lane highway. It has never been accepted in conformity to plat. It is patent, we believe, that no use of it as an integral part of the Subdivision is under the facts possible. There has never been any intention or purpose to improve it as such. Technicalities aside, the State is seeking to treat the dedication of Eddington Drive as constituting a deed to a fee-simple strip 60 feet wide, and incorporate it as an integral part of a 310 foot multi-lane highway which it is constructing. The evidence is conclusive that the State would never have accepted said 60 foot strip and have improved it, except only as an integral part of the multi-lane highway which is being constructed between the cities of Houston and Port Arthur. We agree with appellant

that this does not amount to an acceptance of Eddington Drive, as dedicated, but is a refusal to accept it as such.

We do not deem it necessary to pass upon appellant's contention that it is settled by the decisions of this State that where a street has been accepted and is in use, and it is later enlarged and subjected to a heavier character of traffic, the owner of the fee must be compensated. Milam County v. Akers, Tex.Civ.App., 181 S.W.2d 719, no reversible error. The basis on which the Court rested its holding in the cited case was that the rerouting and new construction of an existing road was analogous to a case in which a road was changed from a third class to a second class road. Had the County accepted Eddington Drive as a street in its own right, and it had become a going concern as a street, it would have been, for purposes of the law, a first class road. And the right of the public to have used it as such, it seems to us, would have become a vested one,—but we are not here concerned with such a point, and as stated, do not pass on that point of law. But here, according to elementary principles of contract law, no right became vested in the public to use Eddington Drive for street purposes, because the State did not accept it as offered. To the contrary, it made a counter offer, namely, since, as dedicated, Eddington Drive was not usable or acceptable, the County would accept same only as an integral part of a multi-lane highway. If the County had any right to accept the offer of the dedication of Eddington Drive, appellant had the right to insist that it be accepted as dedicated. We sustain appellant's relevant points, and hold that it was error to hold that, as a matter of law, the State owned Eddington Drive for street purposes because of the dedication.

In Foley Bros. Dry Goods Co. v. Settegast, 133 S.W.2d 228, 233, it was held by this Court, speaking through Chief Justice Monteith "The rule is well settled in this state that the qualification of a witness testifying as to market value is primarily a question for the trial court and that the trial court's ruling thereon will not be disturbed unless it appears that the court's ruling is clearly erroneous." (Citing authorities.) Error refused. Appellant vigorously complains of the action of the trial court in excluding portions of the testimony of his witnesses, Newberry, Gilbert, Garrett, Bond and Wilkes, tendered as expert witnesses; and in admitting evidence given by appellees' expert witness. We have carefully examined the testimony, and hold that the trial court did not abuse a sound discretion in his rulings on such testimony. Neither do we believe that the court made any reversible or other procedural error complained of by appellant.

For the error of the Court in holding that, as a matter of law, the dedication of the Subdivision had the effect of vesting the State with the title to the area contained in streets which is included in the land described in appellees' petition, the cause is reversed, and remanded for a new trial. However, the jurisdiction of the Court to try the case is determined by the allegations of appellees' petition. We have concluded that the case must be retried in its entirety.

Judgment reversed, and cause remanded.