[No. 20829-0-III.   Division Three.   January 21, 2003.]

ROBERT M. HARRISON, *Respondent*, v. STEVENS COUNTY, *Defendant*, THOMAS CRAIN, ET AL., *Appellants*.

*Marion E. ("Ted") Knauss* (of *Knauss Law Firm*), for appellants.

*John M. Riley III* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*), for respondent.

SCHULTHEIS, J. — When a deed grants property title in fee to one party but reserves mineral rights to another party, the title to the mineral rights is severed from the title to the surface rights. *McCoy v. Lowrie*, 42 Wn.2d 24, 26, 253 P.2d 415 (1953). Robert Michael Harrison obtained by quitclaim deed all "dolomite and limestone and silica and marble rock" located "in, under and upon" 80 acres of land near

Colville. Clerk's Papers (CP) at 12. Thomas and Barbara Crain bought 20 of those 80 acres subject to the reservation of mineral rights and submitted an application for a short plat so they could create four lots on their property. Pursuant to a Stevens County ordinance, short plat applications must be signed by all parties having an ownership interest in the lands to be subdivided. When the planning department granted the short plat application, Mr. Harrison appealed, contending the short plat application must be denied because he had an ownership interest in the Crains' land and had not signed the application. The Stevens County hearing examiner affirmed the planning department. Mr. Harrison then filed a land use petition in superior court, which reversed, finding that Mr. Harrison had a limited surface estate that required his signature on the short plat application.

On appeal, the Crains contend Mr. Harrison's mineral rights are separate and distinct from any surface rights to the subject property. They argue that there is no precedent in Washington law for the trial court's finding of a limited surface estate. Because we find that Mr. Harrison's mineral rights were severed from the fee estate of the surface property, we reverse the superior court and reinstate the decision of the hearing examiner.

FACTS

In April 1998, Mr. Harrison and Robert Martin Harrison obtained by quitclaim deed a mineral estate in 80 acres of land described as follows:

> All dolomite and limestone and silica and marble rock suitable for mining and crushing for roof chips, terrazzo, stucco and related products located in, under and upon the following described lands in Stevens County, Washington:
>
> The E1/2 of the SW1/4 of Section 15, Township 32 North, Range 40 East, W.M.
>
> TOGETHER with the right of ingress and egress for the purposes of mining and removing same.

CP at 12.

The Crains later purchased 20 of the 80 acres via a deed that noted the reserved mineral rights. Because they wanted to clear the way for future development of the property into four lots, they first submitted an application for a short plat sometime in 1999.[1] At that time, Stevens County ordinance 64-1971 (as amended by ordinance 01-1974) required that every short plat application must be signed by "all parties having any interest in the land subdivided." CP at 163. Based on that language, the Stevens County hearing examiner reversed the planning department's approval of the Crains' short plat application, holding that Mr. Harrison had an interest in the land and was therefore a necessary signatory to the application.[2]

In June 2000, the county passed resolution 67-2000 "amending the short platting ordinance as amended regarding ownership interests and eliminating inconsistencies with Title 6." CP at 139. Rather than require on the short plat application the signature of all parties having any *interest* in the land, resolution 67-2000 required the signature of "all parties having any *ownership interest* in the lands subdivided." CP at 145 (emphasis added). After this amendment, the county invited the Crains to again apply for the short plat, and approved the second application in January 2001 without Mr. Harrison's signature. On appeal of this decision, the county hearing examiner affirmed the short plat approval.

Mr. Harrison then filed a land use petition in superior court seeking judicial review of the hearing examiner's decision. Following a hearing and review of the record, the trial court reversed the hearing examiner. The court found that the language in the quitclaim deed to Mr. Harrison was

---

[1] A short plat or short subdivision is a division of land into four or fewer lots. Former RCW 58.17.020(6) (1995).

[2] Information regarding the Crains' first short plat application and former ordinance 64-1971 is contained in a letter from Mr. Harrison's attorney to the hearing examiner during the appeal of the approval of the Crains' second short plat application. The Crains do not dispute these facts and we treat them as verities for the purposes of this appeal.

unique and created a special form of mineral rights constituting "both a mineral estate and a limited surface estate." CP at 102. Consequently, the court held, the Crains' short plat application could not be approved without Mr. Harrison's signature. This appeal followed.

### DISCUSSION

In reversing the decision of the hearing examiner, the superior court found that because the deed of mineral rights specified particular minerals that exist at the surface as well as in the subsurface of the land, the mineral rights constitute both a mineral estate and a limited surface estate. The Crains contend the superior court's review and decision did not comply with the Land Use Petition Act (LUPA), chapter 36.70C RCW.

■ Mr. Harrison petitioned for review of the hearing examiner's land use decision under LUPA, asking the superior court to exercise appellate jurisdiction. To establish a need for relief from a land use decision, the petitioner must meet at least one of the following six standards:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1). Mr. Harrison's petition, while it does not cite specific subsections of RCW 36.70C.130(1), clearly

alleges that the hearing examiner misinterpreted RCW 58.17.165 and the platting ordinance (RCW 36.70C.130(1)-(b)), reached a decision that was not supported by substantial evidence (RCW 36.70C.130(1)(c)), and erroneously applied the law to the facts (RCW 36.70C.130(1)(d)). On appeal to this court, we stand in the same position as the superior court. *Benchmark Land Co. v. City of Battle Ground*, 146 Wn.2d 685, 693, 49 P.3d 860 (2002).

▆▆ Critical to our analysis is an understanding of the respective interests held by Mr. Harrison and the Crains in the land. The Crains purchased their 20 acres by statutory warranty fulfillment deed in 1999. In the usual case, a fee simple estate such as the Crains' estate includes a claim to mineral rights as well as to all other rights incidental to ownership of the fee estate. *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 219, 936 P.2d 1163 (1997). However, when the mineral rights have been reserved or granted to another, the title to the surface and the title to the mineral rights are severed. *McCoy*, 42 Wn.2d at 26. Possession, or ownership, of the surface becomes separate and distinct from ownership of the mineral rights after severance. *Id.* In *McCoy*, the fact that the deed reserved mineral rights "upon or in" the land—implying that such minerals may be found on the surface—did not alter the fact that the mineral estate had been severed from the surface estate. *Id.* at 25-26. The Crains' deed indicates that their ownership is subject to various easements as well as to the quitclaim deed reserving the specified minerals "located in, under and upon" the larger 80-acre parcel. Suppl. CP at 110.

When the Crains decided that they might want to divide their 20 acres into four five-acre lots, they had to apply for a short plat pursuant to the terms of the county's short platting ordinance. RCW 58.17.030, .060. Former Stevens County short platting ordinance 64-1971 (as amended by ordinance 01-1974) required the signature on the short plat application of all parties having *any interest* in the land to be subdivided. Later, the county passed resolution 67-2000,

which amended the short platting ordinance to require signatures of only those parties having *any ownership interest* in the land to be subdivided. This amendment parallels similar language in RCW 58.17.165, which provides that when a subdivision plat is subject to a dedication (such as for streets), the application must include the notarized signatures of all parties that have "any ownership interest in the lands subdivided."[3] *See also* 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 5.2 (1995). Consent by the owners is necessary to prevent future title challenges. *Halverson v. City of Bellevue*, 41 Wn. App. 457, 460, 704 P.2d 1232 (1985).

No Washington case has determined the extent of the ownership interest in a mineral estate. The trial court concluded that an informal comment in a letter from Washington State Assistant Attorney General James Pharris to the Stevens County prosecuting attorney and language in a Texas case, *Slack v. Magee Heirs*, 252 S.W.2d 274 (Tex. App. 1952), *aff'd*, 152 Tex. 427, 258 S.W.2d 797 (1953), indicate that when the specified minerals lie on the surface, they constitute a limited surface estate. This conclusion is without precedent.

In *Slack*, the Texas Court of Civil Appeals held that the owners of a nonspecific mineral estate did not need to join in a dedication of a right of way through a subdivision because the construction of the right-of-way would not affect the mineral estate. 252 S.W.2d at 278. However, the court noted in dicta that if the mineral involved had been asphalt that was near the surface and required removal of the topsoil, then development on the surface would interfere with the owners of the mineral estate; consequently, the

---

[3] Because this is a short plat application, the local short plat ordinance applies and is controlling law whenever the general subdivision provisions of chapter 58.17 RCW conflict. RCW 58.17.030, .060. The trial court incorrectly applied only RCW 58.17.165 to the facts of this case. The Crains argue in their reply brief that because their plat certificate does not contain a dedication, RCW 58.17.165 does not apply. Mr. Harrison moves to strike this argument because it was not raised before the hearing examiner or the superior court. We agree, and strike the dedication issue as improperly raised for the first time on appeal. RAP 2.5(a). At any rate, even the Crains recognize that the county short plat ordinance applies and requires the signature of all who have ownership interests in the land.

owners of that particular mineral estate would be proper parties in the application for a subdivision. *Id.* Current Texas law provides that when substantial quantities of the mineral estate's minerals lie near or on the surface, so that any reasonable method of production would deplete or destroy the surface, the surface owner has title to the minerals. *See Moser v. United States Steel Corp.,* 676 S.W.2d 99, 100 (Tex. 1984). Further, once the surface owner establishes ownership of a mineral at or near the surface, the surface owner owns that mineral at whatever depth it may be found. *Id.* at 100-01. Consequently, *Slack* arguably is no longer applicable, because the owners of a mineral estate in asphalt near the surface of the property would probably be divested of their ownership by the surface owner.

More commonly, courts in other jurisdictions recognize that holders of mineral rights are entitled to use the surface of the property only to the extent reasonably necessary to remove the minerals, and the owner of the surface must not restrict such reasonable and necessary use. *See Schlueter v. Shawnee Operating Co.,* 141 Misc. 2d 1000, 535 N.Y.S.2d 867, 869 (Sup. Ct. 1988), and cases cited therein; *see also Spurlock v. Santa Fe Pac. R.R.,* 143 Ariz. 469, 694 P.2d 299 (Ct. App. 1984), and cases cited therein. As Assistant Attorney General James Pharris stated in his informal opinion letter to the Stevens County prosecuting attorney, the owner of mineral rights is not affected by the partitioning of the surface land, or presumably by the subdivision of the land. *Anderson & Middleton Lumber Co. v. Quinault Indian Nation,* 79 Wn. App. 221, 901 P.2d 1060 (1995), *aff'd,* 130 Wn.2d 862, 929 P.2d 379 (1996). All grantees of the subdivided surface estates will take their property subject to the rights of the owner of the mineral estate. In a subsequent letter, Mr. Pharris declined to comment on the specific facts of Mr. Harrison's case, but offered as one possible issue "the possibility that your deed involves more than mineral rights and grants some form of surface estate." CP at 184.

Mr. Harrison's deed, on its face, grants nothing more than ownership of all dolomite, limestone, silica, and marble rock in the 80 acres of the parcel, as well as the right to enter the property to remove these minerals. This mineral interest will not be affected by the subdividing of the Crains' 20 acres into four five-acre lots, because each new fee interest will include the reservation of the mineral estate. Further, Mr. Harrison's mineral estate, because it is separate and distinct from the surface estate, cannot affect the passing of title to the surface estate or the subdivision of the surface estate. The right to remove minerals from the land is distinct from ownership of the land, even when the minerals lie on the surface. By holding that Mr. Harrison's mineral rights included a limited surface estate, the superior court ignored the severance of the mineral rights from the title to the surface, and made the mineral rights adverse to the surface ownership. *See McCoy*, 42 Wn.2d at 25-26.

On the basis of the above, we conclude that the superior court erred in finding that the hearing examiner misinterpreted the law or erroneously applied the law to the proved facts. RCW 36.70C.130(1)(b), (c), (d). Consequently, we reverse the judgment of the superior court and reinstate the decision of the hearing examiner affirming the approval of the Crains' short plat application. Assuming compliance with RAP 18.1, the Crains, as the prevailing parties, are entitled to statutory attorney fees and costs on appeal pursuant to RCW 4.84.080.

Reversed.

KATO, A.C.J., and KURTZ, J., concur.

Review denied at 149 Wn.2d 1031 (2003).