65 P.3d 366 (2003)
116 Wash.App. 198
SADDLE MOUNTAIN MINERALS, L.L.C., a Washington Limited Liability Company, Gary Maughan and Carol Maughan, husband and wife, Appellants,
v.
Arun JOSHI and Vandana Joshi, husband and wife, and A & V Enterprises, Inc., a Washington Corporation, Respondents.
No. 20714-5-III.
Court of Appeals of Washington, Division 3, Panel Six.
March 20, 2003.
Gregory S. McElroy, Lisa A. Brautigam, McElroy Law Firm PLLC, Seattle, WA, for Appellants.
John P. Raekes, Kennewick, WA, for Respondents.
SCHULTHEIS, J.
Saddle Mountain Minerals, L.L.C., a family company owned by Gary and Carol Maughan, appeals the trial court's summary judgment dismissal of its complaint for damages filed against Arun and Vandana Joshi, doing business as A & V Enterprises, Inc., the developers of a residential subdivision in Benton County. The trial court dismissed the complaint after determining Saddle Mountain could not prove damages. Because there were genuine issues of material fact that should have been addressed, the trial court erred in granting summary judgment. Accordingly, we reverse.

FACTS
This appeal is the result of the co-existent rights to 18.16 acres of undeveloped property located in a residential subdivision in Benton County known as Gage Galaxy. The parcel had been zoned R-2 (high density residential use) by the Richland city council in 1993. Chapter 23.24 Richland Municipal Code (R.M.C.). Mining is neither a permitted nor special use under the code. R.M.C. §§ 23.24.020, .030, .035.
The Maughans had acquired only the mineral rights to this 18.16 parcel of land in 1995 and quitclaimed their ownership interest in it to Saddle Mountain in 2000. The same property, minus the mineral rights, was purchased for residential development by the Joshis in 1999. The Joshis were aware that they did not own the mineral rights to the proposed subdivision prior to purchase. Their offer to purchase the property in question was contingent on receiving preliminary plat approval from the Richland city council to construct Gage Galaxy. Approval was granted on November 3, 1999.
Upon learning of the preliminary plat approval, Saddle Mountain sent a letter to the Richland city attorney regarding its mineral ownership interest in the proposed subdivision. This occurred approximately one week prior to final approval of the subdivision plat. The Joshis were made aware of the Saddle *367 Mountain letter only a few hours before the Richland city council held a public hearing on their final plat approval. Although the city council had before it evidence of an alleged ownership problem between the landowner and the legal owner of the mineral rights beneath Gage Galaxy, final approval of the subdivision was granted on November 7, 2000. There is no evidence Saddle Mountain took part in the public hearing on the plat approval.
Because the land was undeveloped, prior to the construction of homes in Gage Galaxy, some areas of the subdivision had to be graded, or cut down to the proper elevation, while other areas had to be built up, or filled. This was accomplished by moving topsoil from a cut area to an area that needed filling. An access road connects Gage Galaxy to the major arterial connecting with the neighborhood. The Joshis do not own the property on which the access road lies. The access road lies across an abandoned railroad right of way and property that had been previously deeded to the city. The Joshis contend no fill material was cut and exported from the area of the subdivision to the access road; however, Saddle Mountain asserts otherwise.
On April 11, 2001, after the Joshis had begun preparing the property for the construction of homes in Gage Galaxy, Saddle Mountain filed a summons and complaint for damages claiming the Joshis were liable for exporting minerals (i.e., sand and gravel) from Gage Galaxy without the consent of, and without compensating, Saddle Mountain. The Joshis sought summary judgment dismissal contending the lawsuit lacked factual and legal merit. Saddle Mountain vehemently disagrees.
Saddle Mountain filed a cross-motion for summary judgment on the issues of intentional trespass and conversion pursuant to RCW 4.24.630. It later requested a continuance of the summary judgment hearing in order to gather information related to the Joshis' claim they had not moved sand and gravel off the Gage Galaxy site. Although the Joshis would not agree to the continuance, they agreed the alleged conversion claim was not appropriate for a summary judgment hearing because the conversion claim was a disputed material fact.
As a result, at the summary judgment hearing the court agreed to consider only two issues: (1) whether the current zoning ordinance effectively extinguished Saddle Mountain's mineral rights to the Gage Galaxy property; and (2) whether the Joshis' property rights allow them to develop Gage Galaxy as a residential subdivision. At the conclusion of the hearing the court determined that no reasonable juror would find that Saddle Mountain had been damaged by construction of Gage Galaxy because Saddle Mountain's mineral rights were worthless at the time they were acquired due to the zoning prohibition against mining on the property. It also found that the Joshis had the absolute right to subjacent support under the residential subdivision, which precluded mining the sand and gravel underneath. Finally, the court concluded that the Joshis had the lawful right to utilize the surface soil in developing their property. The entire Saddle Mountain lawsuit was dismissed, including the trespass and conversion claims, on summary judgment on November 9, 2001. That same date the court entered an order denying Saddle Mountain's motion to continue the summary judgment hearing on the issue of whether the Joshis had improperly removed sand and gravel off the Gage Galaxy site. Procedurally, Saddle Mountain appealed only the summary judgment dismissal yet it also briefed for us the issue regarding the court's denial of its request for a continuance. This anomaly does not affect our decision.

ANALYSIS
We are asked to determine whether the trial court erred in granting summary judgment dismissal in favor of the Joshis and whether Saddle Mountain should have been allowed a continuance to gather information pertinent to an issue that was relevant to the summary judgment hearing. Our decision regarding summary judgment renders moot the continuance issue.
This court reviews motions for summary judgment de novo, engaging in the same inquiry as did the trial court and treating all facts and inferences in the light most favorable *368 to the nonmoving party, in this case Saddle Mountain. Green v. A.P.C., 136 Wash.2d 87, 94, 960 P.2d 912 (1998). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
Saddle Mountain maintains the trial court's decision on summary judgment was incorrect because there is a genuine issue of material fact regarding whether it continues to hold legal title to the mineral rights on the land in question. It contends the mineral rights reservation was not transferred or extinguished as a result of the residential zone change in 1993, which also creates a question of fact regarding whether Saddle Mountain is owed remuneration by the Joshis for fill (sand and gravel) that was allegedly removed from the co-owned property.
The Joshis disagree, citing I WASH. STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 17.7(5), at 17-27 (3d ed.1997):
There is a distinct tendency at the level of county zoning ordinances, by restriction of land use, to restrict, or in some instances actually destroy, mineral rights. This is particularly true of sand and gravel mining. To the extent that land use regulation destroys the mineral value of land a constitutional question of taking arises. See Pennsylvania Coal Co. v. Mahon, 260 U.S. 393[, 43 S.Ct. 158, 67 L.Ed. 322] (1922); Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470[, 107 S.Ct. 1232, 94 L.Ed.2d 472] (1987). This subject is generally treated under discussions of the limits of police power as opposed to eminent domain, but appropriately must be mentioned in regard to minerals because of the current emphasis on restricting mineral exploitation by land use planning.
As legal support for their position that the mineral rights were destroyed, the Joshis presented the trial court with a 1959 case from Tennessee that held a mineral rights owner was precluded from claiming any right to use property in a manner that was prohibited by a zoning ordinance. Moore v. Memphis Stone & Gravel Co., 47 Tenn.App. 461, 480, 339 S.W.2d 29 (1959). Important to the Moore holding was the fact that the mineral rights holder acquired its rights after the enactment of the zoning ordinance that prohibited the mining activity, which made those rights subject to the limitations and restrictions on usage as found in the zoning ordinance. Id. The Joshis urged the trial court to follow the Moore holding. The court agreed with them and found, as a matter of law, that Saddle Mountain's mineral rights were destroyed once the high density housing ordinance was passed. As a result, it determined summary judgment was appropriate because Saddle Mountain had no right to mine sand and gravel from the Gage Galaxy development and thus had no right to reimbursement for the Joshis' alleged use of fill that was taken off site to build the access road.
This is a case of first impression as there is no legal precedent in this state for either Saddle Mountain's or the Joshis' positions. "In Washington, the law in the state courts construing mineral grants and reservations is embryonic at best." I REAL PROPERTY DESKBOOK, supra, § 17.4, at 17-16. There is no doubt that Saddle Mountain's ability to mine sand and gravel was restricted because the city ordinance states: "All uses not expressly permitted in an R-2 district are prohibited." R.M.C. § 23.24.080. However, what is not clear under these facts is whether the mineral rights were actually destroyed through the rezone or whether they were merely restricted, leaving a genuine issue of material fact regarding whether Saddle Mountain is entitled to remuneration if it is determined the Joshis improperly moved fill from the co-owned property to another site.
We believe summary judgment was improperly granted based on facts that are subject to more than one interpretation. The decision in Moore is one way the issue could be resolved. On the other hand, these facts could allow a reasonable juror to determine that only certain methods of acquiring sand and gravel from the Gage Galaxy site were prohibited by the Richland Municipal Code. There is nothing in the code that states or implies that Saddle Mountain's legal title to the mineral rights was destroyed as a matter of law by the rezone.
*369 On the facts presented, genuine issues of material fact remain regarding the status of the legal title to the mineral rights to the co-owned land and whether Saddle Mountain is entitled to remuneration for fill (the sand and gravel to which it still retained legal title) that was allegedly improperly removed from the co-owned property. Reviewing the facts in the light most favorable to Saddle Mountain, the evidence suggests that the Joshis excavated between 4,000 and 5,000 cubic yards of fill that was taken off site by the Joshis in order to even out the access road into the Gage Galaxy subdivision. Because even the parties agreed this alleged removal of sand and gravel from the building site was a disputed material fact, we respectfully disagree with the dissent's analysis. We agree the Joshis had the right to move sand and gravel around the residential site. The problem arises only to the sand and gravel, if any, that was taken off site to build an access road. Saddle Mountain should have been given the oppertunity to provide evidence regarding its conversionclaim. Under the factual scenario before us, we find the summary judgment was granted in error.
Reversed.
I CONCUR: KURTZ, J.
SWEENEY, J. (dissenting).
This litigation arises from the development of an 18.16-acre tract. In 1993 the City of Richland rezoned the property R-2 (high density residential) under which mining is prohibited. Richland Municipal Code § 23.24.080. In 1995, Saddle Mountain Minerals bought the mineral rights, nonetheless.
In 1999 Arun and Vandana Joshi bought the property and started a residential subdivision. Some parts of the land had to be graded or cut, while others had to be built up, or filled. Clerk's Papers (CP) at 345. Whether the Joshis also removed some topsoil from the property is a disputed fact. But it is not a material fact. A material fact is one that is essential to the outcome of the litigation. Hudson v. City of Wenatchee, 94 Wash.App. 990, 999, 974 P.2d 342 (1999). Whether the Joshis removed topsoil from this site is material only if a reasonable jury could find that such removal caused Saddle Mountain monetary damages. Here, the placement of these materials on or off the development site is irrelevant, so long as they are being used as part of a residential subdivision.
I agree with the trial judge that Saddle Mountain's interest was worthless as a matter of law. And therefore no reasonable jury could find damages.
STANDARD OF REVIEW
In reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999); Taggart v. State, 118 Wash.2d 195, 199, 822 P.2d 243(1992). Summary judgment is proper when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Bishop, 137 Wash.2d at 523, 973 P.2d 465.
RCW 4.24.630
Saddle Mountain claims damages from the Joshis under RCW 4.24.630. For me, the outcome of this case turns, not on the resolution of disputed facts by a jury, but on the interpretation of a statute by the court. We must determine, as a matter of law, whether Saddle Mountain has stated a cause of action against the Joshis.
The legislature has determined the precise value of such a claim:

Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury.
RCW 4.24.630(1)(emphasis added). Thus, to avoid summary dismissal, the statute (i.e., the legislature) requires Saddle Mountain first to make a showing of some dollar amount of damages. Without such a showing, there can be no material facts at issue *370 and the Joshis are entitled to judgment as a matter of law.
And, absent a showing of monetary damages, the value of Saddle Mountain's claim against the Joshis is precisely equal to the value of the mining rights Saddle Mountain acquired after all mining was prohibited by the rezoning ordinancezero.
Resolution of this dispute requires judicial interpretation of the word "minerals" as used in RCW 4.24.630(1). And that requires statutory interpretation, not fact finding. In doing so, I would hold that the Joshis did not remove "minerals" from the land, for the purposes of the statute.
The word "mineral" is used in so many senses, dependent upon the context, that the ordinary definitions of the dictionary throw but little light upon its signification in a given case.
N. Pac. Ry. v. Soderberg, 188 U.S. 526, 530, 23 S.Ct. 365, 47 L.Ed. 575 (1903) (emphasis added); Puget Mill Co. v. Duecy, 1 Wash.2d 421, 426, 96 P.2d 571(1939). In Weyerhaeuser Co. v. Burlington Northern, Inc., the court reversed a trial court's ruling that the term "minerals" was unambiguous:
Accordingly, it is apparent to us that "minerals" is at least ambiguous as to whether intended to include all inorganic material or simply valuable deposits such as "coal, iron, natural gas and oil."
Weyerhaeuser Co. v. Burlington N., Inc., 15 Wash.App. 314, 319, 549 P.2d 54 (1976)(emphasis omitted)(citing Puget Mill, 1 Wash.2d 421, 96 P.2d 571). The question is the intention with which the parties use the term. Puget Mill, 1 Wash.2d at 425-27, 96 P.2d 571.
We turn, therefore, to the context in which the term "minerals" is used here.
In one sense, sand and gravel are certainly minerals. When, for example, they are exploited by means of open pit mining. But in most contexts, sand and gravel are not "minerals" at all. A gardener removes dirt, a rock, gravel, and sand from a field. A farmer does the same. Are they mining? Are they removing minerals? Of course not. And neither were the Joshis. They moved fill dirt to level ground as part of a housing development. As a matter of law, I would hold that sand and gravel used in the context of this transaction is fill dirtnot minerals.
Saddle Mountain would have a claim only if the Joshis began commercially removing (mining) sand and gravel (minerals) for profit. They are not.
THE ZONING ORDINANCE
Mining is "[t]he process of extracting ore or minerals from the ground." BLACK'S LAW DICTIONARY 1010 (7th ed.1999). Under the zoning ordinance in force here, all mining is prohibited. The development of a residential subdivision is, however, permitted. And necessarily, to do this permitted activity, the Joshis, like all developers, cut and fill. This included building a road required by the City of Richland as a condition for approval of this plat.
Saddle Mountain invites us to hold that, in Washington, the acquisition of imaginary rights to virtual assets derived from makebelieve interests in land can produce real dollars squeezed from the pockets of legitimate entrepreneurs undertaking genuine risks of actual development of the land for a useful purpose, as well as from the ultimate financial underwriters of the projectthe home-buying public. To do so would not only contravene public policy, but would also usurp the prerogative of the legislature in violation of the constitution.
To require the Joshis to pay a royalty every time they move fill dirt because Saddle Mountain acquired paper "mineral rights" seriously undermines the right of this surface owner to develop the property. To extend judicial sanction to Saddle Mountain's proposed interpretation thwarts the orderly development of property. Saddle Mountain contends that the zoning regulatory scheme "merely impairs the case of commencing commercial mining operations." Appellant's Br. at 19 (emphasis added). But the zoning regulations do more than this. They prohibit all mining.
So even if we were to agree with Saddle Mountain that its title to the sand and gravel was not extinguished by the land use restriction, its ability to extract those materials certainly was. If Saddle Mountain does not *371 have the right to remove sand and gravel, on what is its claim of damages to be based? On what ground does it claim a royalty from a developer moving dirt to develop a residential subdivision? The net effect is to impose a tariff on the surface ownersand ultimately on the home buyerfor exercising their legal right to move sand and gravel incident to surface development.
NATURE OF SADDLE MOUNTAIN'S PROPERTY RIGHT
Saddle Mountain also complains that the Joshis submitted their preliminary plat application without the consent of affected property owners as required by ordinance. The city council, acting in a legislative capacity, gave the required plat approval following notice and public hearing, pursuant to the municipal code. Review of the city council action is not properly before us.
Washington case law on mining questions generally is sparse. But the nature of Saddle Mountain's right is a question that has been answered by this court recently in Harrison v. County of Stevens.[1]
In Harrison, the county required that all parties having "any ownership interest in the land subdivided" sign the plat application. Harrison v. County of Stevens, 115 Wash. App. 126, 129, 61 P.3d 1202, 1204 (2003), petition for review filed, (Wash. Feb. 27, 2003) (No. 7365-3). Judge Schultheis, writing for the panel, held (in my view correctly) that the owner of the mineral rights was not an affected property owner and was not therefore entitled to notice:
The right to remove minerals from the land is distinct from ownership of the land, even when the minerals lie on the surface. By holding that Mr. Harrison's mineral rights included a limited surface estate, the superior court ignored the severance of the mineral rights from the title to the surface, and made the mineral rights adverse to the surface ownership.
Harrison, 61 P.3d at 1206(citing McCoy v. Lowrie, 42 Wash.2d 24, 25-26, 253 P.2d 415 (1953)).
Here, the Joshis are the surface owners. Their claim to an absolute right to the surface estate without interference (or imposition of a tariff) from those owning the "mineral rights" (whatever they may be) is, then, well founded. Harrison, 61 P.3d at 1206.
CONCLUSION
In sum, the terms "minerals" and "mining" are contextually driven. In this case the Joshis are not mining for minerals. They are certainly moving sand and graveldirt. But they are doing so to develop a subdivision. They should have no obligation then to pay the owner of "mineral rights" a royalty for that use. Moreover, the meaning and legal effect of the terms "damages," "minerals," and "mining," as used in the state statute and city zoning code, are questions of law, not fact. Whatever our disposition, the question of the legal effect of these terms should be judicially determined, not remanded for a jury to determine.
I respectfully dissent.
NOTES
[1] Harrison v. County of Stevens, 115 Wash.App. 126, 61 P.3d 1202 (2003), petition for review filed, (Wash. Feb. 27, 2003) (No. 73655-3).