189 P.3d 821 (2008)
SADDLE MOUNTAIN MINERALS, L.L.C., a Washington Corporation; Gary Maughan and Carol Maughan, husband and wife, Appellants,
v.
SANTIAGO HOMES, INC., a Washington Corporation, and Santiago Bridgewater Estates, a California Limited Partnership, Respondents.
No. 26460-2-III.
Court of Appeals of Washington, Division 3.
June 26, 2008.
Publication Ordered August 12, 2008.
*822 Gregory S. McElroy, McElroy Law Firm PLLC, Seattle, WA, for Appellants.
Stephen Templeton Osborne, Rettig, Osborne & Forgette, LLP, Kennewick, WA, for Respondents.
KULIK, A.C.J.
¶ 1 Saddle Mountain Minerals, L.L.C., owns extensive mineral rights near Kennewick, Washington. Santiago Homes and Santiago Bridgewater Estates (Santiago) own the surface rights to property burdened by Saddle Mountain's mineral rights. Saddle Mountain filed this action seeking injunctive relief and damages for statutory and common law trespass, conversion, and constitutional taking. The trial court granted summary judgment in favor of Santiago and dismissed Saddle Mountain's claims for statutory and common law trespass. Later, the Supreme Court decided Saddle Mountain Minerals, L.L.C. v. Joshi, 152 Wash.2d 242, 95 P.3d 1236 (2004), which examined Saddle Mountain's mineral rights in another property. Joshi concluded that Saddle Mountain owned the minerals in, on, and under the property regardless of zoning limitations on Saddle Mountain's ability to mine the minerals and that "Saddle Mountain can take sand and gravel from the surface by any procedure whatsoever." Id. at 255, 95 P.3d 1236.
¶ 2 We hold that Joshi is controlling here. The trial court erred by dismissing Saddle Mountain's statutory trespass claim but did not err by denying summary judgment on the issue of common law trespass. Accordingly, we reverse in part and remand to the trial court.

FACTS
¶ 3 Saddle Mountain is a limited liability corporation formed by Gary Maughan and Carol Maughan to develop mineral properties in Washington. Saddle Mountain owns extensive minerals and mineral rights in the Kennewick area. One of Saddle Mountain's properties in Kennewick is the subject of this lawsuit. This property's legal description is: Section 1, Township 8 North, Range 28 East, W.M. The Maughans initially purchased the mineral rights to this property from Glacier Park Company and then transferred the rights to Saddle Mountain.
¶ 4 Santiago Homes owns a portion of the surface burdened by Saddle Mountain's mineral rights. Santiago Homes operates a mobile home sales facility on the property. Santiago Bridgewater Estates also owns property burdened by Saddle Mountain's mineral rights. Santiago Bridgewater Estates is developing a mobile home park on the property.
¶ 5 The severance of the mineral rights from the surface interest occurred when Glacier Park Company sold the surface interest to Santiago Home's and Santiago Bridgewater's predecessors. The contract for deed creating the mineral rights reads in part, as follows:
EXCEPTING AND RESERVING, however, to the Grantor, for itself, its successors and assigns, forever, all right, title and interest, legal and equitable, whatsoever, however derived, reserved or held, in and to all geothermal heat and all ores and minerals of any nature whatsoever, including, but not limited to, oil, gas, other hydrocarbons, carbon dioxide, coal, iron, gas occurring in coal formation, industrial minerals, metallic minerals, aggregates, sand, gravel, clay, uranium, rock, including but not limited to, rock of a unique character (hereinafter "minerals"), in and under or which may be produced from the above-described real estate.
Clerk's Papers (CP) at 156.
¶ 6 The Maughans, and later Saddle Mountain, obtained the mineral rights and Santiago *823 Homes and Santiago Bridgewater obtained the surface interest.
¶ 7 In 1996, Santiago Homes performed mineral extraction, grading, and construction on its property. During this process, material was removed from property burdened by the mineral reservation. Santiago Bridgewater also performed mineral extraction, grading, and construction on its property for phase 1 of the mobile home park. This work included grading and removal of material. Some material was used in the development and some material was removed to a location off the property.
¶ 8 The property contained sand, gravel, and aggregate. Earlier, three gravel mines had been located on or near the property. One of the mines was outside the boundaries of Saddle Mountain's mineral reservation. To reclaim this area for development, Santiago exported fill from Saddle Mountain mineral reservation to the mine property. Minerals were also exported to another project.
¶ 9 The Maughans informed Santiago, and its processors, of work the Maughans believed resulted in a trespass on Saddle Mountain's mineral reservation. After attempts to resolve this matter failed, Saddle Mountain filed this lawsuit seeking injunctive relief and damages for statutory and common law trespass, conversion, and constitutional taking.
¶ 10 The parties filed cross-motions for summary judgment. On July 25, 2002, the court dismissed Saddle Mountain's claims for statutory trespass and common law trespass.
¶ 11 On August 12, 2004, the Supreme Court issued its decision in Joshi, which is dispositive here. The Supreme Court had not decided Joshi when the trial court here made its decision. However, this same trial court had earlier addressed the same issues in Saddle Mountain Minerals, L.L.C. v. Joshi, No. 01-2-00664-6 (Benton County Super. Ct., Nov. 9, 2001).

ANALYSIS
¶ 12 Trespass. Saddle Mountain asserts the trial court erred by granting partial summary judgment to Santiago Homes and Santiago Bridgewater, dismissing Saddle Mountain's claims of statutory and common law trespass to the minerals. Saddle Mountain also contends that the trial court failed to grant Saddle Mountain's cross-motions for summary judgment despite uncontroverted evidence that Santiago exported minerals owned by Saddle Mountain without permission.
¶ 13 Joshi is controlling. In Joshi, the owners of the mineral estate, Saddle Mountain, brought an action seeking damages. Saddle Mountain alleged that the Joshis exported sand and gravel from Saddle Mountain without permission or payment. Saddle Mountain alleged that the Joshis committed statutory trespass under RCW 4.24.630, trespass to mineral rights under the common law, and common law conversion. Joshi, 152 Wash.2d at 246-47, 95 P.3d 1236.
¶ 14 The trial court granted summary judgment in favor of the Joshis. The trial court concluded that Saddle Mountain was barred from recovery because mining was not permitted under the applicable zoning ordinance. The trial court also held that the Joshis' right to subjacent support precluded sand and gravel mining. Finally, the trial court held that a residential developer, like the Joshis, had a right to utilize surface soil in the development of the Gage Galaxy development. Id. at 245, 247, 95 P.3d 1236.
¶ 15 The Court of Appeals, Division Three, reversed.[1] The appellate court determined that a reasonable juror could conclude that any mining of sand and gravel from the site was prohibited or that only certain methods of obtaining sand and gravel were prohibited. The appellate court concluded that the trial court erred by granting summary judgment in favor of the Joshis. Saddle Mountain Minerals, L.L.C. v. Joshi, 116 Wash.App. 198, 205, 65 P.3d 366 (2003), aff'd, 152 Wash.2d 242, 95 P.3d 1236 (2004).
¶ 16 The Supreme Court affirmed this court's decision. In reaching its decision, the Supreme Court noted that the mineral reservations *824 considered in Joshi were broad. Significantly, the language of the mineral reservations in Joshi is the same as the language here. See Joshi, 152 Wash.2d at 245 n. 1, 95 P.3d 1236. In describing the scope of the mineral reservation, the court stated:
According to the warranty deed for this sale, minerals including sand and gravel were excluded from the sale and the mineral owner had a right to enter upon the surface of the property for the purpose of drilling, extracting, operating, and working any extraction and processing facilities by any procedures whatsoever.
Id. at 245, 95 P.3d 1236.
¶ 17 The court also concluded Saddle Mountain was entitled to damages for sand and gravel exported off the property even if the local ordinance prevented Saddle Mountain from extracting it. The court explained that "sand and gravel are not worthless." Id. at 254, 95 P.3d 1236. The court determined that Saddle Mountain owned the sand and gravel located in and under the nonmineral estate:
Saddle Mountain retains much more than a limited type of minerals beneath the surface. The warranty deed provides that Saddle Mountain owns any kind of minerals in and under the Gage Galaxy site including sand and gravel. If Saddle Mountain finds any kind of minerals in the Gage Galaxy site even without digging or mining, such minerals belong to Saddle Mountain.
Id. at 252, 95 P.3d 1236.
¶ 18 In Joshi, the trial court held that Saddle Mountain was precluded from recovering damages because the Joshis are entitled to subjacent support. However, the Supreme Court examined the deed and determined that Saddle Mountain can take sand and gravel from the surface by any procedure whatsoever. As a result, the issue of subjacent support did not automatically preclude Saddle Mountain's extractions from the surface. The court explained that Saddle Mountain may be able to extract sand and gravel by a method that did not affect subjacent support. Id. at 254-55, 95 P.3d 1236.
¶ 19 In short, Joshi held that Saddle Mountain owns the minerals, including sand and gravel, located in, on, or under the Joshis' property, regardless of zoning limitations on Saddle Mountain's ability to mine the sand and gravel and that the scope of Saddle Mountain's mineral rights may not raise the issue of subjacent support. Furthermore, the Joshis can develop the surface, but if they extract and export valuable sand and gravel, payment must be made to Saddle Mountain. Id. at 256, 95 P.3d 1236.
¶ 20 Here, Saddle Mountain also has an expansive mineral right that is not affected by the local ordinance and which may not raise the issue of subjacent support.
¶ 21 Santiago attempts to distinguish this case from Joshi. Santiago points out that in Joshi, the record did not support a finding that open pit mining was the only way to obtain sand and gravel. Id. at 255, 95 P.3d 1236. According to Santiago, here Saddle Mountain admitted that open pit mining was the only method of removing the sand and gravel. Santiago believes that this type of mining would damage Santiago's subjacent support.
¶ 22 Santiago's argument is without merit. First, Gary Maughan did not testify that surface mining was the only method to obtain minerals from the property. Second, there are no facts in the record demonstrating that the exercise of Santiago's mineral rights would impact Santiago's right to subjacent support.
¶ 23 Santiago suggests it has an absolute right to develop the property and, as such, Santiago is entitled to subjacent rights. In Joshi, the Supreme Court reasoned that a surface owner may have rights to use the surface soil for development, but this does not mean that the surface owner can export minerals without payment to the owner of the mineral rights. Id. at 256, 95 P.3d 1236.
¶ 24 Saddle Mountain filed this action for intentional trespass, the value of the minerals taken from the property, and for injunctive relief. The trial court heard arguments on cross-motions for summary judgment. The court dismissed Saddle Mountain's claim for damages for common law trespass and statutory *825 trespass. The court did not dismiss Saddle Mountain's other claims.
¶ 25 Applying Joshi, Saddle Mountain owns minerals in, on, or under the property. Saddle Mountain owns these minerals regardless of zoning limitations on Saddle Mountain's ability to mine. Saddle Mountain owns these minerals despite any restrictions to ensure subjacent support. Moreover, these minerals have value and if Santiago exports sand and gravel from the property, Santiago must make payment to Saddle Mountain. For its part, Santiago is free to develop the property and Saddle Mountain is not entitled to compensation for minerals that are not exported from the site.
¶ 26 Santiago argues that Saddle Mountain did not submit any evidence demonstrating that there was a method of mining that would not impact Santiago's right to subjacent support and its right to use the surface. However, the record demonstrates that sand and gravel had already been obtained from one or more gravel pits on the property without affecting the lateral support and without violating the Kennewick ordinance.
¶ 27 Santiago asserts that the trial court properly granted summary judgment because Saddle Mountain did not suffer any damages. But this argument is contrary to Joshi, which held that Saddle Mountain was entitled to damages even if a local zoning ordinance precluded it from mining "because sand and gravel are not worthless." Id. at 254, 95 P.3d 1236.
¶ 28 Santiago argues that Saddle Mountain failed to raise an issue of fact as to intentional trespass. Santiago contends the record is devoid of any evidence showing Santiago knew that its subcontractor was removing minerals from the property. To support this argument, Santiago relies on Ventoza v. Anderson, 14 Wash.App. 882, 545 P.2d 1219 (1976).
¶ 29 The Ventoza court approved a jury instruction setting forth the rule that:
"One who engages an independent contractor to perform logging operations is not liable to landowners for the trespasses of the independent contractor or those employed by the independent contractor, whether as agents or independent contractors themselves, unless the trespass is the result of the advice or direction of the principal, or unless the principal has notice of the trespass and fails to interfere."
Id. at 895, 545 P.2d 1219.
¶ 30 Here, the record shows that Santiago Homes served as general contractor for the development of Santiago Bridgewater Estates. Significantly, Santiago's contract specifications determined the final contours of the project. Lisa Brautigam, an attorney for Saddle Mountain, explained that the grading plan shows that a large amount of excess material was removed from the property. She stated that this material has not been accounted for. In short, Saddle Mountain has raised a question of material fact as to whether Santiago knew that materials were being exported from the property.
¶ 31 The court erred by granting summary judgment to Santiago, dismissing Saddle Mountain's trespass claims.
¶ 32 Intentional Trespass. RCW 4.24.630(1) provides in part:
Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act.
¶ 33 Saddle Mountain argues that the trial court erred by failing to grant summary judgment in favor of Saddle Mountain on the issue of liability for intentional trespass. In Saddle Mountain's view, Santiago was responsible for all work performed; witnesses had observed dump trucks removing minerals from the property and taking them to another development. Saddle Mountain contends that Santiago knew of Saddle Mountain's *826 rights but willfully and intentionally chose to ignore those rights.
¶ 34 Saddle Mountain refers to several events that would have informed Santiago of Saddle Mountain's mineral rights. Saddle Mountain points out that as early as 1997, the Maughans and others contacted Santiago representatives to express concern as to whether the Santiago development would utilize Saddle Mountain's minerals without its permission. Representatives from Saddle Mountain and Santiago met to discuss the problem in 1999. Numerous letters were sent to Santiago, but the problem could not be resolved.
¶ 35 In making this argument, Saddle Mountain assumes that Santiago accepted Saddle Mountain's view of their mineral rights. But Saddle Mountain's view of the mineral rights was not adopted until Joshi was decided on August 12, 2004. Prior to that time, Santiago may have believed that Saddle Mountain had no right to the minerals because of the Kennewick ordinance. There is a question of fact as to whether Santiago intentionally and unreasonably committed acts while knowing, or having reason to know, that it lacked authorization to do so.
¶ 36 The trial court did not err by failing to grant partial summary judgment in favor of Saddle Mountain on the issue of liability for intentional trespass.
¶ 37 Actual Damage. Santiago argues that two loads of dirt, sand, and gravel were exported a short distance from the property and that these loads remain there. Santiago also points out that Saddle Mountain dismissed its claim for conversion. According to Santiago, this means that the value of the two loads must be negligible.
¶ 38 Lana Franklin, a former owner and corporate officer of Santiago, testified that dirt from the Santiago property was used to fill the abandoned county mine site. Santiago's grading and construction plan demonstrated a large amount of excess material was removed. This material remains unaccounted for.
¶ 39 Evidence submitted by Saddle Mountain indicates that it may have actual damages. Because there are material issues of fact, this matter must be remanded.
¶ 40 Conclusion. We reverse the trial court's grant of summary judgment in favor of Santiago on the statutory trespass claim and remand for further action based on the holdings in Joshi.
WE CONCUR: BROWN, J., and THOMPSON, J. Pro Tem.
NOTES
[1] Saddle Mountain Minerals, L.L.C. v. Joshi, 116 Wash.App. 198, 65 P.3d 366 (2003), aff'd, 152 Wash.2d 242, 95 P.3d 1236 (2004).